THE LINDEN PARK BLOOD HORSE ASSOCIATION, PLAINT-
IFF IN ERROR, v. THE STATE, DEFENDANT IN ERROR.

1. An indictment charges the keeping a disorderly house, setting out the causes of disorder. Among such causes, gaming was not included. *Held,* the defendant on such a charge could not be convicted of keeping a common gaming-house.
2. Specifications of the characteristics of the house in point of disorder are matters of description, and a case must be proved to answer to them or some of them.

On error to the Supreme Court.

For the plaintiff in error, *Cortlandt & R. Wayne Parker.*

For the defendant in error, *Richard V. Lindabury.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The indictment in this case charged as follows, viz., that the defendant "unlawfully did keep and maintain a certain common, ill-governed and disorderly house; and in the said house, for its own lucre and gain, certain persons, as well men as women, of evil name and fame, and of dishonest conversation, then and on the said other days and times, there unlawfully and wilfully did cause and procure to frequent and come together. And the said men and women in the said house of it, the said The Linden Park Blood Horse Association, at unlawful times, as well in the night as in the day, then and on the said other days and times, there to be and remain, drinking, tippling, fighting, whoring and misbehaving themselves, unlawfully and willfully did permit, and yet does permit," &c.

At the trial under this indictment, the defendant was convicted of the offence of keeping a common gaming-house— an offence, it will be observed, that is not among the specifications of misconduct that were alleged to have made the house of the defendant a disorderly one. The only disorder proved, or attempted to be proved to the jury, was

the prevalence of habitual gambling on the premises of the defendant.

The only question to be considered is whether, under such an indictment as the one present upon this record, such proof and the ensuing conviction were legitimate.

The crucial test of the inquiry obviously is whether the specifications of the acts that constitute the house a disorderly one are necessary parts of the charge. That they are such is demonstrably clear. No one with any knowledge of law would say that a general charge of keeping a disorderly house, without any indication of the circumstances that make it such, would satisfy the legal rule of criminal pleading. As well allege that a man committed, without further description, a larceny, as to charge, in the same uncircumstantial fashion, that a man kept a disorderly house.

It is the primary rule respecting indictments, that they should be framed with sufficient certainty. "For this purpose," the language is that of Chitty, " the charge must contain a certain description of the crime of which the defendant is· accused, and a statement of the facts by which it is constituted, so as to identify the accusation, lest the grand jury should find a bill for one offence and the defendant be put upon his trial in chief for another, without any authority." " Such statements of facts are essential," the author further remarks, " in order that the defendant's conviction or acquittal may insure his subsequent protection should he be again questioned on the same ground, and that he may be enabled to plead his previous conviction or acquittal of the same offence, in bar of any subsequent proceedings."

With respect to the class of cases now before the court, it is obvious that both of the safeguards above designated, of the rule thus stated, will not exist unless there be a specification of the wrongdoings of the culprit, whereby his house is made a disorderly one. By the constitution of our state, no person can be held to answer for a criminal offence " unless upon the presentment or indictment of a grand jury," and, in order to effectuate this provision, it is indispensable that the

charge preferred by that body should be sufficiently descriptive, so as to clearly show a specific crimination. In all the forms of criminal pleading founded on the common law, probably not one can be found which omits to set forth, in explanation of the general charge of keeping a disorderly house, a description of the habitual misconduct that justifies such characterization of the house itself. An indictment laying to the defendant the charge of keeping a disorderly house, by reason of it being kept as a bawdy-house, would not evince the purpose of the grand inquest to criminate him on the ground that his house was disorderly, from the circumstance that liquor was habitually sold in it, in violation of law. Where, therefore, in the instance before us, the grand jury has specified certain courses of criminal conduct as those that have rendered the defendant's house a common nuisance, and among such causes has omitted the practice of gambling, it is not perceived how it can be said that the criminal offence of keeping a public gaming-house, of which the defendant has been convicted, is founded, as the constitution requires, upon an accusation of the grand inquest.

Nor would a defendant, if such a conviction as has obtained in this case is to stand, be possessed of the second of the safeguards, that the rule requiring, according to Chitty, a certain description of the crime charged to be contained in the indictment. If he were indicted in the future for keeping a gaming-house, it is difficult to see how he could plead, in answer to such an accusation, his present conviction. Such a plea would be contradicted by the record before us, for it would show upon its face that the second indictment was for an offence not charged in the first. Nor could such a showing be contradicted by parol, for this would be to falsify the record itself. The rule of the law and of common justice is that the offence must be charged in the indictment, in a certain and identifiable form, and this principle is so essential to the personal security of the citizen that it is not to be impaired, no matter how great the particular exigency may be.

Before closing the inquiry, it may be well to remark that

the only theory on which a result opposite to the one just indicated could rest, would be the principle that it would be sufficient to insert a general charge in an indictment that the defendant had kept a disorderly house, without stating the circumstances that had made it such. With respect to such a position, it has been said that it is presumed that no person conversant with the law would venture to assume it; but, be this as it may, it would seem to be still more abnormal to predicate that when a description was, in point of fact, appended to such general charge, so as to particularize it, that, thereby, such general charge would not become specific. This would be conspicuously contrary to a legal principle that no one has ever doubted—that is, that a description of an essential fact in an indictment becomes itself an essential. If a man be indicted for the theft of a white horse, he cannot be convicted of the larceny of a horse of a different color. The adjective "white" was not necessary to the formality of the charge, but, being introduced and being descriptive of the subject of the crime, the stolen animal must correspond to the specification. So that, in the present case, as the disorderly house in question has been described, the defendant could not lawfully be convicted of the keeping of any house not answering such description. This is but saying, in effect, that when the grand jury prefers an accusation that the culprit has kept a tippling-house, he cannot, on such an indictment, be tried for keeping of a gaming-house.

There is no legal ground on which the present conviction can stand. The judgment, therefore, must be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, ABBETT, DEPUE, DIXON, GARRISON, LIPPINCOTT, MAGIE, REED, BOGERT, BROWN, CLEMENT, KRUEGER, SMITH.    14.