THE STATE v. JOANNA DE LORENZO AND CHRISTOPHER NEUPERT.

Argued June 7, 1910—Decided January 6, 1911.

1. The only ground upon which a party to a litigation will be heard to attack the constitutionality of a statute is that it infringes upon some right given to him by the provision of the constitution which, it is claimed, has been violated.

2. The permitting of an amendment to an indictment, charging the offence of keeping a disorderly house, the purpose of which is to change the period during which the nuisance was continued as declared by the grand jury in the indictment, is not a matter within the discretion of the court, and the granting of such permission is error.

3. A defendant cannot legally be convicted of the offence of keeping a disorderly house upon proof that the house was one of ill fame, or that liquor was there sold without a license, unless these specific offences are mentioned in the recital of the various acts of misconduct set out in the indictment.

On error to the Hudson Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices TREN-CHARD and MINTURN.

For the plaintiff in error, *Joseph M. Noonan.*

For the state, *Pierre P. Garven,* prosecutor of the pleas.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The indictment upon which the defendants in this case were convicted charged them with the offence of keeping a disorderly house. When the case was moved for trial the defence interposed a challenge to the array of petit jurors then in attendance upon the court, on the ground that the panel was not composed of jurors who were drawn for the then present service by the sheriff, but that, in violation of the constitutional guaranty of trial by jury, it was composed partly of jurors drawn for that service by the sheriff, and partly of jurors appointed by the court in substitution for jurors drawn by the sheriff. The challenge was overruled upon the ground that the method of selecting a jury panel specified in the challenge is expressly authorized by the supplement to the Jury act approved April 16th, 1906. *Pamph. L., p.* 218. The overruling of the challenge is made the basis of the first assignment of error, and the contention of counsel in support of it is that the supplement of 1906 is invalid because, under the constitution of our state, the power, duty and function of drawing and returning the common petit jury is vested solely in the sheriffs of the respective counties, and cannot be taken from those officers by legislative enactment.

Our constitution, although it makes no specific mention of the duties which are to be performed by a sheriff or of the functions of his office, imposes upon him those duties, and vests in him those functions which pertained to the office at the time of the adoption of the constitution. *Virtue* v. *Freeholders,* 38 *Vroom* 139. But, though the drawing of petit jurors has usually been done by the sheriffs of our respective

counties, from colonial days down to the present time, it has never been the *exclusive* function of those officers to do so. Before New Jersey became a sovereign state, both civil cases and criminal misdemeanors were frequently tried in England before special or struck juries, and such juries were never selected by the sheriff. 3 *Blacks. Com.* 357; 2 *Tidd* 788. By the constitution of 1776, paragraph 22, the common law of England was made a part of our system of jurisprudence, and that provision was retained in the constitution of 1844, so that trial by special or struck juries, not only has always been a part of our judicial procedure, but is authorized by the constitutional provision referred to. This being so, if the legislature should consider that more exact justice would ordinarily be done between litigants if all actions at law and all criminal causes were tried before struck juries, and should therefore enact that hereafter all such cases should be so tried, it is difficult to see upon what ground such action could be held to infringe upon any constitutional prerogative of the sheriff, notwithstanding that thereby his function of drawing jurors would be entirely suspended. And if the legislature may do this, why may it not pass laws providing for the selection of jury panels partly by the sheriff and partly by the court, or by the sheriff subject to revision by the court, without infringing on the constitutional rights and functions of that officer?

This much has been said for the purpose of pointing out that the question raised by the assignment of error is quite different from that which was before the court in *Virtue* v. *Freeholders, supra,* where it was held that, under the constitution of this state, the custodianship of the common jails of the several counties of the state is vested in the sheriffs of those counties, and cannot be transferred by the legislature to other officers to be selected by it.

But the validity of the supplement to the Jury act of 1906 is not open to challenge by the plaintiff in error. The function of the courts with respect to legislation deemed unconstitutional is not exercised *in rem,* but always *in personam.* *Allison* v. *Corker,* 38 *Vroom* 596, 601. It is only in cases where a statute affects the rights of parties to judicial proceedings that

courts will pass upon the question whether or not it violates constitutional provisions. *Lang* v. *Bayonne,* 45 *Id.* 455, 460. Stated in another way, a party will only be heard to attack a statute, upon the ground that it violates a constitutional provision, when it infringes upon a right given to him by that provision. *Henderson* v. *State, 137 Ind.* 552, 564, 565. The constitution of our state guarantees to a person charged with a criminal offence the right to have a speedy and public trial by an impartial jury, but not to have the jury selected by any particular person, or in any particular manner. As was said by Mr. Justice Depue in *Brown* v. *State,* 33 *Vroom* 666, 676, 678: "The qualification of jurors, and the means by which they are to be selected and impaneled, constitute no part of the essential features of trial by jury, and there is no requirement in the constitution with respect to either of these matters. They are left in the discretion of the legislature with no restriction or limitation except that the accused shall have the right to be tried by an impartial jury."

We conclude, therefore, that the plaintiff in error can take nothing by this assignment.

The indictment as presented by the grand jury charged the defendants with keeping and maintaining a disorderly house on the 13th day of February, 1910, and on divers other days and times between that day and the day of the taking of the inquisition—which was the 1st day of April, 1910. After the challenge to the array of jurors, interposed by counsel for the defendant, had been overruled, the prosecutor of the pleas moved to amend the indictment "to reach back for a period of one year beyond the date therein mentioned." The motion was granted over the objection of defendant's counsel, who thereupon asked an exception to the ruling. The court refused to allow the exception, stating that the matter passed upon was one of discretion. Counsel then asked an exception to this latter refusal, and it was allowed and sealed. On it error is assigned, and, on the argument, counsel seeks to challenge the validity of the ruling allowing the amendment. Strictly speaking, the bill of exceptions only presents the question whether the trial court was right in refusing to allow an excep-

tion to the original ruling, but, as the judgment must be reversed for a reason to be presently indicated, and the case must go back to be retried, we think it proper to say that we consider the allowance of the amendment to have been illegal, and to indicate the reasons for our opinion. The keeping of a disorderly house is a public nuisance. The law holds every continuance of a nuisance to be a new nuisance; and, consequently, a recovery in one action does not prevent a recovery in a subsequent suit for damages which have been sustained during the time not covered by the first. 21 *Am. & Eng. Encycl. L.* 724; 29 *Cyc.* 1255; *Wood Nuis.,* § 823. For the same reason a conviction on an indictment charging the maintenance of a public nuisance, which is continuous in its nature, during a specified period, is no bar to a conviction on another indictment charging the maintenance of the same nuisance during another period not outside the statute of limitations. Moreover, although a person is guilty of the offence of keeping a disorderly house when he maintains a place of public resort in which any kind of illegal practices are habitually carried on, yet the common law form of charging this offence in an indictment is usually observed, and so it is quite possible that, under two indictments against the same person almost identical in verbiage, presented at different times and covering different periods, very dissimilar offences are in reality intended to be charged. For instance, the foundation of the one indictment might be the keeping of a gaming house contrary to law, and the real charge intended to be laid in the other might be the maintenance of a house of ill fame. Manifestly, a conviction on the one indictment would not sustain a plea of *autrefois convict* to the other, for that plea is only available where the offence charged in the indictments is one and the same. But if the court into which the indictments are returned is at liberty to amend one of them so as to embrace the period covered by the other, it is difficult to see why a conviction had upon the amended indictment could not be successfully pleaded as a bar on the trial of the other. Both indictments would show upon their face the same offence, and such showing could not be contradicted by parol, for this

would be to falsify the record itself. If this be the situation, then clearly the trial court, under the guise of an amendment, has not only nullified the action of the grand jury, so far as one indictment is concerned, but has put the defendant upon trial for an offence other than the one charged by that body.

The only other assignments of error which require consideration are directed at the refusal of the trial court to charge two requests submitted by counsel for plaintiffs in error. They were that no conviction could be based upon a finding by the jury that the house kept by the defendants was a bawdy house, or upon a finding that liquor was habitually sold upon the premises in violation of law.

It is plain from the bill of exceptions, and, indeed, it is conceded on the part of the state, that the gravamen of the state's case against the defendants was the keeping of a house of ill fame, and the illegal selling of intoxicating liquors. The indictment charged that the defendants "unlawfully did keep and maintain a certain common ill-governed and disorderly house; and in the said house for their own lucre and gain certain persons, as well men and women, of evil name and fame, and of dishonest conversation, then and on the said other days and times, there unlawfully and willfully did cause and procure to frequent and come together, and the said men and women in the said house of them the said Christopher Neupert and Joanna De Lorenzo, at unlawful times, as well in the night as in the day, then and on the said other days and times there to be and remain, drinking, tippling, fighting and misbehaving themselves, unlawfully and willfully did permit, and yet does permit, to the great damage," &c. It will be observed from this recital that neither of the offences set out in the requests to charge are among the specifications of misconduct that were alleged to have made the house of the defendants a disorderly one. In the case of *Linden Park Horse Association* v. *State*, 26 *Vroom* 557, the defendant was indicted for and convicted of the crime of keeping a disorderly house. The specific offence proved against it was the maintaining of a place where gaming was publicly carried on. That offence

was not mentioned in the recital of the various acts of misconduct set out in the indictment. Chief Justice Beasley, delivering the opinion of the Court of Errors and Appeals, declared that the specification of the acts which constituted the house a disorderly one is a necessary part of the charge in the indictment, and that in order to effectuate the constitutional provision that no person shall be held to answer for a criminal offence except upon the presentment or indictment of a grand jury, it is indispensable that the charge preferred by that body should be sufficiently descriptive to clearly show a specific crimination; and that, when the character of the disorder which renders the house a public nuisance is specified in the indictment, the defendant cannot be lawfully convicted of the keeping of any house not answering such description. This, he concludes, "is but saying that, when the grand jury prefers an accusation that the culprit has kept a tippling house, he cannot, on such an indictment, be tried for the keeping of a gaming house." The cited case rules the present one upon the question now under consideration. The defendants were entitled to have the jury instructed in accordance with their requests, and the refusal of the trial court to do so vitiates their conviction.

The judgment under review must be reversed.