80 N.J. Super. 502 (1963)
194 A.2d 252
THE STATE OF NEW JERSEY, PLAINTIFF,
v.
DOMINIC A. LALLY, MICHAEL V. ALBERTINE, ERNEST S. ARVIDSON, FRANK N. DiRUGGIERO, RICHARD H. DRAKE, NICHOLAS S. JULIANO, ARTHUR M. PICO, ALFONSO ALVEREZ AND FELIX J. McCORMICK, DEFENDANTS.
Superior Court of New Jersey, Law Division  Criminal.
Decided September 25, 1963.
*504 Mr. Charles C. Carella, Assistant Prosecutor, for plaintiff (Mr. Brendan T. Byrne, County Prosecutor of Essex County, attorney).
Mr. Samuel A. Larner, for defendant Dominic A. Lally (Messrs. Budd, Larner & Kent, attorneys).
Mr. Dickinson R. Debevoise, for defendant Michael V. Albertine (Messrs. Riker, Danzig, Scherer & Brown, attorneys).
Mr. Walter D. Van Riper, for defendants Ernest S. Arvidson and Frank N. DiRuggiero (Messrs. Van Riper & Belmont, attorneys).
Mr. Adrian M. Foley, Jr., for defendant Richard H. Drake (Messrs. Pindar, McElroy, Connell & Foley, attorneys).
Mr. Samuel Weitzman, for defendant Nicholas S. Juliano (Messrs. Weitzman, Brady & Weitzman, attorneys).
Mr. C. Robert Sarcone, for defendant Arthur M. Pico (Messrs. Sarcone & Mascia, attorneys).
Mr. Francis W. Hayden, for defendant Alfonso Alverez.
Mr. Harold L. Kaplan, for defendant Felix J. McCormick (Messrs. Kaplan & Stier, attorneys).
MATTHEWS, J.S.C.
Defendants Dominic A. Lally, Michael V. Albertine, Ernest S. Arvidson, Frank N. DiRuggiero, Richard H. Drake, Nicholas S. Juliano and Arthur M. Pico, *505 members of the Board of Education of the Town of Belleville, Essex County, hereafter referred to as board members, were indicted on October 10, 1962, on two counts, charging each with misconduct in office. Defendants Alfonso Alverez and Felix J. McCormick were also indicted on two counts for aiding and abetting defendant board members to commit the crime of misconduct in office. All defendants have moved to dismiss the indictment, citing three principal grounds: (1) the indictment fails to charge crime; (2) the charging part of the indictment is vague and indefinite and is faulty by reason thereof; (3) the first count of the indictment is duplicitous in that it charges two separate offenses therein. Our concern is with the first and third counts of the indictment which charge the substantive offense of misconduct in office. Obviously, the disposition to be made as to the first and third counts will dictate the course to be followed as to the second and fourth which charge aiding and abetting.
The first count of the indictment charges that between the 15th day of September 1960 and the 22nd day of December 1961 the seven defendant board members were duly qualified and elected members of the Board of Education of the Town of Belleville, and, as such, were charged as such public officials with the duties to serve the public honestly, diligently, with good faith, openly and without corrupting influences. It further charges that during the mentioned period of time defendant board members did
"unlawfully, knowingly, willfully and corruptly refuse to reveal certain essential and material information, to wit:
(a) The true conditions of the subsurface soil on the proposed new Belleville High School building site, located at Passaic Avenue and Division Street, in the Town of Belleville, in the County of Essex aforesaid, more particularly, the results of the Walsh Report, dated April 28th, 1961, received by the said Board of Education, a public body, during the month of May, 1961.
to the citizens of the Town of Belleville prior to the School Board Referendum dated October 17, 1961, and prior to the School Board Referendum dated December 21, 1961, with the intent to mislead the citizens of the Town of Belleville."
*506 The State claims that, in essence, count one of the indictment charges defendant board members with misfeasance in office, i.e., doing an otherwise lawful act in a wrongful manner.
The third count of the indictment charges that during the period of time set forth in the first count, defendant board members, as duly qualified and elected members of the board of education, were charged with the duties to "serve the public honestly, diligently, with good faith, openly and without corrupting influences," and that during the mentioned period of time, they "unlawfully, knowingly, willfully and corruptly, refused to seek out, investigate and reveal the essential and material information" set forth in subparagraph (a) in the first count, "knowing that the said essential and material information was demanded of them by the citizens of the Town of Belleville at public meetings, and knowing they were under a duty to seek out, investigate and reveal the essential and material information as aforesaid." The State contends that the third count of the indictment, in essence, charges defendants with nonfeasance in office, i.e., omitting to do an act which is required by the duties of office.
In dealing with the issues arising out of the contentions advanced by the parties here, I am well aware that a motion to dismiss an indictment is addressed to my discretion, and that the power of a trial court to dismiss is to be exercised only on the clearest and plainest ground, and not for some arbitrary, vague or fanciful reason. State v. Weleck, 10 N.J. 355, 364 (1952); State v. Western Union Telegraph Co., 13 N.J. Super. 172, 204 (Cty. Ct. 1951), affirmed 12 N.J. 468 (1953). The acceptable judicial standard has been stated to be that a motion to dismiss an indictment will not be granted unless the palpable deficiency of the indictment is obviously prejudicial to the defendant in the preparation and presentation of his defense. State v. Engels, 32 N.J. Super. 1, 7 (App. Div. 1954).
Both the first and third counts characterize defendant board members' activities as knowing, willful and corrupt. Both counts charge them with the common law offense usually *507 referred to as misconduct in office. N.J.S. 2A:85-1. Whether the first count and the third count charge defendant board members with the specific misconduct of misfeasance and nonfeasance, respectively, I believe to be of no significance, since both misfeasance and nonfeasance are embraced by the general classification of official misconduct. Perkins, Criminal Law, p. 412 et seq. (1957). The offense of misconduct in office has been defined by Professor Perkins to be corrupt misbehavior by an officer in the exercise of the duties of his office, or while acting under the color of his office. Ibid., p. 413. See also, 1 Burdick, Law of Crime, § 272, pp. 387-8 (1946). While there has been a great deal of dispute in this State over the necessary elements of the crime of misconduct in office, compare State v. Winne, 12 N.J. 152 (1953), with State v. Williamson, 54 N.J. Super. 170, 184 (App. Div. 1959), affirmed per curiam 31 N.J. 16 (1959), and State v. Begyn, 34 N.J. 35, 50 (1961), it is clear that the willful or intentional refusal by a public officer to perform the duties of his office constitutes the element of mens rea of the offense. In the words of Professor Perkins, it is corrupt for an officer purposely to violate the duties of his office. Perkins, op. cit., p. 412.
The main thrust of defendants' assault on the indictment is not toward a failure to charge criminal intent, but rather toward the failure of the State to charge the violation of a duty, imposed upon defendant board members either by statute or by common law, arising out of the inherent nature of the office held. Thus, defendants argue, there is nothing in the law which casts upon them, as members of a board of education, the duty to reveal information of the nature complained of here, whether the same be demanded by the members of the school district or not. They claim, therefore, that since it is essential that an indictment for misconduct in office allege both a prescribed duty of the office and facts constituting breach thereof, the indictment here under consideration is palpably defective.
*508 The State contends, on the other hand, that the charging portion of each count sets forth in clear and explicit terms the duties of the office of a member of a board of education, and, further, that each of the counts sets forth the facts which it is alleged constitute a breach of those duties.
In State v. Weleck, 10 N.J. 355, 366 (1952), it is stated:
"* * * Duties may be imposed by law on the holder of an office in several ways: (1) they may be prescribed by some special or private law, such as official action of a township committee, or a provision of a municipal charter; (2) they may be imposed by a general act of the Legislature; or (3) they may arise out of the very nature of the office itself. In those instances where the duties are prescribed by some special or private law, the indictment must show the source of the duties, but where the duties are imposed by a general statute or arise out of the very nature of the office, the source of the duty need not be alleged in the indictment for the courts will take judicial notice of such duties." (Citations omitted)
The indictment under consideration here charges that the misconduct of defendant board members was in violation of N.J.S. 2A:85-1, that is, that the duties imposed upon them arise out of the very nature of the office itself. The inquiry here, therefore, must go to the existence or nonexistence of such duties with respect to defendants as members of the Board of Education of the Town of Belleville.
Shortly after defendants were arraigned and had entered pleas of not guilty to the counts of the indictment, motions were noticed on their behalf demanding particulars. After some time had elapsed, answers were provided by the State which defendants deemed not suitable. When it became apparent to me that the litigants were about to become involved in a time-consuming wrangle over the answers supplied by the State, I invited counsel to appear before me for a pretrial conference under the provisions of R.R. 3:5-3. All defendants were also invited to be present. As a result of the pretrial conference, the State prepared a nine-page statement of its contentions in an effort to amplify the charges set forth in the first and third counts of the indictment, and, *509 also, to obviate the necessity of repeated procedural steps with respect to particulars. It was after the State's contentions were filed with the pretrial order that the present motions for dismissal were noticed and argued. Of course, the contentions filed by the State in lieu of particulars cannot be used to breathe life into an indictment which is not comprehensive enough to embrace the offense charged. State v. Williamson, supra. An indictment must allege facts in themselves sufficient to sustain a conviction, and not as a result of particularization, since otherwise a defendant might be brought to trial upon a charge not found by the grand jury, or upon a charge different from the one which the grand jury intended. Linden Park Blood Horse Association v. State, 55 N.J.L. 557, 558 (E. & A. 1893); State v. Sullivan, 33 N.J. Super. 138, 141 (App. Div. 1954).
As I understand the argument of the State, it contends there are certain duties which are fundamental and generally known and accepted which relate to the office of a member of a board of education. Since public officers are under an indisputable obligation to serve the public with the highest fidelity, and in dealing with the public to display good faith, honesty and integrity, the refusal or failure to reveal information concerning the true condition of the subsurface soil at the proposed high school site, must necessarily constitute a dereliction of these inherent duties. The State also contends that there is a duty affirmative in nature imposed upon board members to deal with the protection of the school district, the betterment of education, the erection of new school buildings, the handling of monies, the call of special elections, the dealing with the constituents of the school district, and the handling and disseminating of facts prior to a referendum for a proposed new school. Specifically, the State argues that no member of a board of education may refuse to reveal essential and material information relative to a referendum then pending which may, in any way, alter its outcome. This is so, the State contends, because members of a board of education, as trustees, are the persons peculiarly able to gather and disseminate *510 all information concerning the salient facts behind a referendum proposal.
Defendants argue that there is no obligation imposed by law on the defendant board members to reveal the information referred to in the indictment, even assuming that they had it in their possession, or had control over it. It is their contention that it is fundamental that the extent to which a member of a board of education is required to go in divulging information pertaining to public business is entirely discretionary, unless it has to do with an obligation unconditionally required of his office. The obligation to reveal the soil condition for a proposed school site is not, defendants argue, an unconditional requirement of the office of a member of a board of education. At best, if such information is in the possession or control of board members, it becomes a matter of discretion whether or not it should be revealed.
The Board of Education of the Town of Belleville is constituted under the provisions of Title 18, Chapter 7, of the Revised Statutes. Its members are elected by the members of the school district which is coterminous with the Town of Belleville. Generally, the statutory duties of members of boards of education are found spread throughout the various chapters of Title 18 which deals with education. There can be no dispute that nowhere in the provisions of that Title is there to be found a separate statutory mandate providing for the duty on the part of members of a board of education, such as has been alleged to be breached in the charges made in the indictment here. If there be such a duty imposed upon members of a board of education, then it must be found to be inherent in the nature of the office itself. State v. Winne, supra; State v. Begyn, supra; State v. Cohen, 32 N.J. 1, 6 (1960).
Under the provisions of R.S. 18:11-1, each school district is required to provide suitable school facilities and accommodations for all children who reside in the district and desire to attend the public schools therein. Such facilities are deemed to include proper school buildings. Under the provisions *511 of N.J.S.A. 18:11-2, failure on the part of a school district to provide such facilities and accommodations empowers the county superintendent of schools wherein the school district is located to order the withholding from the district of all monies of the school district received from the State as state school aid, until such suitable facilities or accommodations shall be provided.
N.J.S.A. 18:7-73 provides that with the prior authority of a vote of the legal voters of the district, a board of education may erect school buildings.
Clearly, R.S. 18:11-1 carries an express mandate to boards of education that they provide school buildings which are suitable for school use. The duty to provide such buildings is subject, however, to the approval of the members of the school district, who must express their consent thereto through the procedures of an election. Can it be said that since the board of education, and therefore its members, have the distinct duty of providing school facilities, that such duty requires a concomitant duty that they provide the members of the school district with all information concerning the facilities proposed in an effort to gain public approval? I have been unable to find, and counsel have been unable to call to my attention, any case which provides a clear answer to this question.
In Durgin v. Brown, 37 N.J. 189 (1962), our Supreme Court had before it a dispute involving a consolidated school district which embraced the municipalities of Westwood and Washington Township. A proposal for the construction of new school buildings which had previously been submitted to the members of the consolidated district and approved by them, was subsequently sought to be disaffirmed by the board of education. In speaking of the interrelationship between the power of a board of education under R.S. 18:11-1 and the need for approval by the members of the school district, the court stated:
"Nor does the referendum serve to vest in local government the power to deal with a problem. That power was already granted to *512 the Board by R.S. 18:11-1 mentioned above. Rather N.J.S.A. 18:5-86 contemplates that the Board first exercise that power by adopting a specific plan; that consents be then obtained from the State Commissioner of Education and the Local Government Board; and finally, that the specific plan receive the voters' stamp of approval. * * *
In these circumstances, the Legislature could hardly have meant that, notwithstanding the election, the Board may change its mind with the freedom it would have if its discretion alone were involved. Rather we think the Legislature committed the final judgment to the voters.
This is not to say that the vote upon the referendum must be obeyed no matter what may later ensue. We may assume the Legislature intended some residual power to meet the extraordinary or unexpected. One can conceive of supervening events which so nullify the premise upon which the vote was had, that discretion remains in the Board to seek relief from the mandate in the public interest. But to rehash the merits of the policy decision which was submitted to the electorate and to decline to fulfill its will because the same or new members of the Board now prefer another program is something else. The time for the Board's decision upon such matters was before the vote. When the voters approved the proposals, the debate upon policy was ended." (37 N.J., at p. 198; emphasis added)
Thus, it has been determined that the formulation of a specific plan for providing adequate school facilities is a policy decision to be determined by the board of education. The specific plan, as submitted, may either be accepted or rejected by the members of the school district. There is no in-between decision that can be made. While the final judgment as to whether the specific plan should or should not be carried out is left to the voters, nevertheless, the judgment of the voters may be subject to being overruled should events subsequent to the referendum arise which in the judgment of the board of education would act to invalidate the plan adopted.
While it may be argued that since final judgment as to whether a given plan for the providing of school facilities should be adopted is left to the members of the school district, all information bearing on a proposal should be given to the voters, I think that such an argument overlooks the actual function of a board of education. There can be no question but that the Legislature has given to the members *513 of the board of education as representatives of the public the power (and duty) to deal with matters of education. In this capacity, board members act as agents of the State. Landis v. School District No. 44, 57 N.J.L. 509, 510 (Sup. Ct. 1895). Upon them is imposed the duty to provide educational facilities. The members of the board of education are elected to office because they are believed by the electorate to possess knowledge and ability to carry out the purposes of the education laws. If this be so, as I believe it to be, the activities of members of boards of education should be the exercise of their own discretion in determining the proper method to provide adequate educational facilities for the children of the district. Accordingly, when the board of education submits a proposal for the construction of a school building to the members of the district for approval, that proposal represents the sound judgment of the majority of the board, and is, presumably, the result of investigation, advice and debate. In short, it is a policy determination. While there can be no question but that the voting members of the school district must have information in order to determine intelligently whether the proposal advanced should be adopted or not, I do not believe that the commonsense requirement for the dissemination of information entails a complete review and evaluation of the policy decision made by the elected representatives. If such a requirement should be determined to exist, the necessity for a board of education as a policy making body would soon disappear. To accept the contention of the State would, in my judgment, relegate a board of education to the status of a group of fact gatherers, rather than the elected representatives of the members of the school district. Dissatisfaction on the part of school district members with the exercise of discretion and the formulation of policy on the part of any board member may always be expressed at the polls.
In Citizens To Protect Public Funds v. Board of Education of Tp. of Parsippany-Troy Hills, 13 N.J. 172, 173 (1953), our Supreme Court in dealing with an issue involving the *514 propriety of the expenditure of public funds for a brochure which advocated an affirmative vote on the proposal to erect new schools, observed:
"* * * The need for full disclosure of all relevant facts is obvious, and the board of education is well qualified to supply the facts. But a fair presentation of the facts will necessarily include all consequences, good and bad, of the proposal, not only the anticipated improvement in educational opportunities, but also the increased tax rate and such other less desirable consequences as may be foreseen. If the presentation is fair in that sense, the power to make reasonable expenditure for the purpose may fairly be implied as within the purview of the power, indeed duty, of the board of education to formulate the construction program in the first instance. * * *
We do not mean that the public body formulating the program is otherwise restrained from advocating and espousing its adoption by the voters. Indeed, as in the instant case, when the program represents the body's judgment of what is required in the effective discharge of its responsibility, it is not only the right but perhaps the duty of the body to endeavor to secure the assent of the voters thereto. * * *" (13 N.J., at pp. 180, 181; emphasis added)
Both Durgin v. Brown, supra, and Citizens To Protect Public Funds v. Board of Education of Tp. of Parsippany-Troy Hills, supra, although not dealing with criminal matters, clearly indicate the discretion vested in boards of education in the formulation of policy.
The information alleged to have been withheld from the public in the two counts under consideration here was the so-called "true" subsurface soil condition of the building site upon which the proposed new high school is to be erected. There is no charge advanced in either count of the indictment to the effect that defendant board members failed, in any manner, to acquaint themselves with that condition during the planning stages of the proposal ultimately submitted. Nor is there a charge that they disregarded expert advice concerning the subsurface soil condition, or that they failed to bring knowledge of that condition to the attention of any appropriate authority. Implicit in the charges contained in these counts is the fact that the board members made a determination to build the school on the site in question; presumably, *515 the members made their own determination, as I believe they should have, as to whether the site was suitable or not. This determination was their determination to make and, in my opinion, theirs alone. To submit to the voters of the district a question such as the suitability of the soil of a given site for a schoolhouse location, would constitute an abdication of their individual responsibilities as board members. I fail to see, therefore, how the refusal or failure to disclose the information complained of would constitute a violation of the duties of office of these defendants.
I am aware of the fact that the third count of the indictment charges the board members with refusal "to seek out, investigate and reveal the information" which the first count charges they wrongfully withheld. My reading of the charge indicates that the claim made in the third count contradicts itself, since the count also charges that that same information was "unlawfully, knowingly, willfully and corruptly withheld." If by this latter phrase it was meant that the board members were the withholders, the charge contained in the count is identical with that contained in the first count. Since there is no other person mentioned in the count as the withholder, I must assume this to be the case. In any event, the activity alleged in the third count relates to the claimed duty of defendant board members to provide the members of the school district with information concerning soil conditions. In this it suffers of the same defects as the first count.
There is nothing in this indictment which charges defendants with the failure to carry out their statutory duties as members of the board. It is undisputed that in placing before the members of the school district the proposal for the construction of the new high school, defendants were carrying out the legislative mandate found in R.S. 18:11-1. No inference can be drawn from the contents of either count that the board members were involved in corrupt activity, such as self-dealing, evasion of the bidding laws, extortion or bribery. The breach of conduct with which they are charged *516 constitutes specifically the failure to publish the results of a test boring report received by them during the month of May 1961.
In State v. Cohen, 32 N.J. 1, 11 (1960), Chief Justice Weintraub, in a concurring opinion, stated that "Criminal law is no place for judicial ingenuity and invention," and that "the Judiciary cannot uphold a common-law crime, if one can be found, which thus depends upon the taste of the individual judge or juror." At best, the entire area embracing the crime of official misconduct, or misconduct in office, offers many tenuous considerations. A review of the numerous cases printed in our reports which deal with this offense makes it readily apparent that many difficulties arise when the courts are asked to notice judicially the elements of this crime as they are claimed to arise out of the inherent nature of a given public office. See, e.g., State v. Winne, State v. Williamson, and State v. Cohen, supra. While no court will condone the misuse or abuse of power by a public official, equally the courts must be quick to prevent the use of a catch-all concept under which well meaning public officers may suddenly find themselves charged with crime. The creation of criminal liability is, under our system of government, peculiarly a legislative function. The Legislature has not established that the failure to disclose information, such as is complained of here, should constitute a crime. While it may well be that common sense would require the proponents of a public question to give all pertinent information to the electorate in an effort to achieve adoption, I cannot believe that the judgment of an official as to what extent that exercise in common sense should go, is to be regarded as criminal. If such be the case, I am afraid that few would be willing to embark upon such a selfless career as board of education members, lest the exercise of discretion visit upon them conviction of crime. The place to air partisan disputes over the advisability of adopting a public proposal, or not, is on a public platform or in the press, and not in the criminal courts.
*517 I am concerned here with the substance of this indictment and not its form. State v. Bolitho, 103 N.J.L. 246, 263 (Sup. Ct. 1926). The indictment must contain a description of the crime of which defendants are accused, and a statement of the facts by which it is constituted, so that those accused may prepare their defenses and, if necessary, at a later time, plead a prior conviction or acquittal of the same offense in bar of any subsequent proceedings. State v. Spear, 63 N.J.L. 179, 181 (Sup. Ct. 1899).
It is my conclusion that the indictment here is palpably defective in that it does not charge a crime in either the first or third count thereof. I find that no statutory or common law duty was violated by defendant board members under the facts alleged in the indictment. In view of these determinations, the just course to follow is to dismiss all counts of the indictment and thereby relieve defendants of the expense and vexation of a trial.
For the reasons hereinabove expressed, defendants' motion to dismiss indictment No. 284 of the 1962 term is granted.