134 N.J. Super. 253 (1975)
339 A.2d 233
GERALDINE SILVERMAN, JOHN DALTON, RUTH J. DALTON, JOHN J. CAFFREY, SR., EUGENE ZDUNIEWICZ, PLAINTIFFS,
v.
BOARD OF EDUCATION OF THE TOWNSHIP OF MILLBURN, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided May 14, 1975.
*256 Mr. Edward Kucharski for plaintiffs.
Mr. Steven B. Hoskins for defendant (Messrs. McCarter & English, attorneys).
THOMAS, J.S.C.
This action comes before the court by way of an order to show cause. Plaintiffs are a bondholder and taxpayers residing in the Township of Millburn. Defendant is the Board of Education of Millburn. This dispute has arisen over the proposed action of defendant board to close the Washington Elementary School and lease it to the State Department of Education for use as a school for the hearing handicapped. There being no factual disputes, but only questions of law, the action is being resolved on cross-motions for summary judgment.
Washington School was constructed in 1968 with funds from a multi-purpose school bond issue. Construction was approved by a referendum on January 24, 1967 which "authorized" the board of education "to construct a new elementary schoolhouse to be designated as Washington School." The same referendum also authorized defendant to purchase land and embark on other construction projects not connected with the Washington School. The total amount of bonds authorized was $2,870,000. This amount was greatly in *257 excess of the sum needed for construction of Washington School. The bonds themselves do not specify for what purposes the money is to be used, except to say they were authorized by virtue of the January 24, 1967 referendum. The bonds contain no express covenants restricting the use of the Washington School building for use as an elementary school.
Plaintiffs challenge the proposed lease of the school to the State, asserting that once a capital project is approved by the voters and constructed, its use may not be changed as long as there remains an outstanding debt for the structure. The only exceptions plaintiffs would permit to the change of use would be if the change is approved by the voters at a referendum or if the building remains unused. Plaintiffs therefore argue that the board of education has only three alternatives with regard to the use of this still bond-indebted structure: (1) use it as an elementary school, (2) vacate the building and have it remain unused, or (3) get voter approval to change the use. Plaintiffs' argument would also preclude the use of the school structure as a high school or a junior high school without voter approval.
Defendant has raised two grounds upon which it contends the court should not hear this controversy on the merits. These grounds are lack of standing on the part of plaintiffs to maintain this action and plaintiffs' failure to exhaust their available administrative remedies.
Plaintiffs have standing to maintain the action under the New Jersey courts' liberal approach to the issue of standing. In Crescent Park Tenants Ass'n v. Realty Equity Corp. of N.Y. Park Ass'n, 58 N.J. 98 (1971), our Supreme Court noted that the courts in New Jersey will not entertain proceedings by plaintiffs who are mere "intermeddlers" or "interlopers" or "strangers" to the dispute. The court went on to say:
Without ever becoming enmeshed in the Federal complexities and technicalities, we have appropriately confined litigation to those situations where the litigant's concern with the subject matter evidenced a sufficient stake and real adverseness. In the overall we *258 have given due weight to the interests of individual justice, along with the public interest, always bearing in mind that throughout our law we have been sweepingly rejecting procedural frustrations in favor of just and expeditious determinations on the ultimate merits. [at 107, 108; citations omitted]
The record is clear that plaintiffs are not strangers to the dispute nor intermeddlers, but rather they represent their own personal interest and the public interest of the community in the resolution of the dispute over the closing of this school. Plaintiffs have evidenced a sufficient stake and a real adverseness to entitle them to standing in this controversy.
Furthermore, it is not necessary for plaintiffs to exhaust their administrative remedies before a judicial review of this controversy. This court recognizes that the Commissioner of Education has jurisdiction to hear and determine controversies that arise pursuant to his powers under N.J.S.A. 18A:6-9. The court is also mindful of the fact that in most circumstances, before there may be a judicial review of a school board's decision, there must be an exhaustion of administrative procedures unless the interests of justice require otherwise. See East Brunswick Bd. of Ed. v. East Brunswick Tp. Council, 48 N.J. 94 (1966). However, our Supreme Court stated in Matawan v. Monmouth Cty. Tax Board, 51 N.J. 291 (1968), that when an issue to be decided is solely a question of law, the doctrine of exhaustion of administrative remedies is not applicable. This question was also considered in Durgin v. Brown, 37 N.J. 189 (1962) where the court was called upon to determine the effect of a referendum passed by the voters authorizing bonds for the construction of a new high school. The court found:
The amount of administrative expertise involved must also be considered, but although the view of the state agencies would undoubtedly be desirable, the case ultimately involved a question of law concerning the effect to be accorded to the referendum. In these circumstances we cannot quarrel with the trial court's exercise of discretion. [at 203]
*259 It is immaterial to a determination of the issue of an exhaustion of administrative remedies whether this case comes to the court by way of an action in lieu of prerogative writs or otherwise. Therefore, since the controversy before the court involves what is essentially a purely legal question, plaintiffs will not be required to exhaust their administrative remedies.
Plaintiffs seek to have this court restrain the closing of the Washington Elementary School on two grounds: (1) that the bondholders would be adversely affected if the school is no longer operated as an elementary school, and (2) since construction was approved by the voters and underwritten from funds of a resulting authorized multi-purpose bond issue not yet repaid in full, the school will remain a capital debt owed by the taxpayers, while the benefits for which the school was constructed will have been withdrawn without returning to the voters for their approval of the proposed change of use.
It is established law in this State that a local board of education may in the exercise of its discretionary powers discontinue the use of a public school within the boundaries of its jurisdiction. Boult v. Passaic Bd. of Ed., 136 N.J.L. 521 (E. & A. 1948); Schults v. Teaneck Bd. of Ed., 86 N.J. Super. 29 (App. Div. 1964), aff'd 45 N.J. 2 (1965). In addition to its right to close a school, the board of education may, pursuant to powers granted by virtue of N.J.S.A. 18A:20-2, sell and lease real estate and personal property, subject to restrictions provided in N.J.S.A. 18A:24-76.
The first question which then arises is whether N.J.S.A. 18A:24-76 comprises such a restriction since it provides:
No bond resolution * * * shall be modified, altered, revoked, added to or otherwise changed in any respect that would tend to adversely affect the interest or right of the holder of any bond or bonds issued hereunder. This provision shall be deemed to be a contractual obligation and not subject to modification or repeal so long as any of said bonds are issued, outstanding and unmatured. * * *
The court finds that this section is not an operative restriction on the proposed lease of Washington School. N.J. *260 S.A. 18A:24-76 became effective in 1971, four years after the bond referendum was approved, and thus the provisions of this section were not in the contemplation of the bondholders or taxpayers at the time of the referendum and could not give rise to a contractual obligation during the period of the bond issue. More importantly, even if N.J.S.A. 18A:24-76 were given retroactive application, there has been no showing that change in use of the school would adversely affect any of the bondholders monetary interest. In fact, the contrary is true. The school building will no longer be a money-consuming entity but rather will generate funds for the school district by virtue of the lease to the State.
Plaintiffs, conceding that the bondholders will not suffer any impaired investment due to the proposed change of use, nevertheless contend that the bondholders will be adversely affected in another manner. It is argued that the holders of the bonds lent their money for a specific purpose, i.e., the Washington Elementary School. It is to be inferred from this that had the bondholders known that the school would not be used as an elementary school, they would have not purchased the bonds. I disagree.
The funds spent for the Washington School were only a portion of the total bond issue and the bondholders could not specify where the proceeds of the bonds were to be used. Moreover, had the bondholders wanted to restrict the future use of the capital projects which they were underwriting, they could have insisted on specific covenants in the bonds restricting the projects to the desired use.
The next question which arises is whether the decision to operate Washington School as an elementary school is binding since it was approved by a referendum. In Durgin v. Brown, 37 N.J. 189 (1962), the court discussed the effect of a binding referendum on subsequent actions of the school board. The court said:
In these circumstances, the Legislature could hardly have meant that notwithstanding the election the board may change its mind with the freedom it would have if its discretion alone were involved. *261 Rather we think the Legislature committed the final judgment to the voters. [at 198]
But the Supreme Court cautioned:
This is not to say that the vote upon the referendum must be obeyed no matter what may later ensue. We may assume the Legislature intended some residual power to meet the extraordinary or unexpected. One can conceive of supervening events which so nullify the premise upon which the vote was had, that discretion remains in the board to seek relief from the mandate in the public interest. [at 198]
The affidavit of Paul Rossey, Superintendent of the Millburn Schools, sets forth the enrollment figures of the Washington School for the years 1972, 1974 and the projected enrollment for the 1975 school year. In 1972, 168 pupils were enrolled. The projected figure for the 1975 school year is 128 students, resulting in a net loss of 47 students or almost a 28% reduction in enrollment. The court finds that such a decrease in enrollment is the type of a supervening event contemplated by Durgin, thereby relieving the board from further compliance with the referendum. See also State v. Lally, 80 N.J. Super. 502 (Law Div. 1963).
The voters of Millburn have elected the board of education to formulate and execute educational policies for Millburn Township. The members of the board are responsible for the efficient operation of the school system. If the board were so limited in its discretion so as to prevent it from making the best use of the physical assets of the school district, the voters would ultimately be the ones to suffer. Here the board has determined that the Washington School is not needed as an elementary school. It would be illogical, unreasonable and probably in derogation of the board's responsibility to the residents of Millburn to allow the school to remain open partially used by a limited number of students or to allow the school to remain vacant when a satisfactory and advantageous lease could be entered into for its public use. When the circumstances upon which a referendum is *262 based have so changed, the board must be able to act, albeit in a reasonable manner, in a way consistent with the public interest.
The township's schools will be run at a lower cost without any sacrifice in the quality of education. In addition, the lease of the building to the State Department of Education will not only generate enough income to pay the principal and interest on the bonds, but will provide a decent and necessary facility for the education of hearing-handicapped children.
This is not a case where a facility was built with funds from a bond issue for school purposes and then the use changed to a remote use. Rather the change present here is still an educational use consistent with the purposes for which the school was built. Shuster v. Hardwick Tp. Bd. of Ed., 17 N.J. Super. 357 (App. Div. 1952).
The action of the school board to discontinue the use of Washington School is a proper function of the school board. This is not to say that the plaintiffs have no recourse. As the court in Lally said:
Dissatisfaction on the part of the school district members with the exercise of discretion and the formulation of policy on the part of any board member may always be expressed at the polls. [80 N.J. Super. at 512]
The court finds that there has been no abuse of the board's power in the closing of the Washington School. Nor has this court found the board's action to be arbitrary, capricious or unreasonable. In fact, the action of the board under the circumstances is in the best interest of the community. Further, the board's action is not taken in bad faith. The bonds were requested and authorized for a needed purpose. This purpose was fulfilled with the construction and operation for seven years of the Washington School. Changed circumstances dictate the change of use.
The court, therefore, denies plaintiffs' motion for summary judgment and grants defendant's motion to dismiss the *263 complaint. The temporary restraint continued to date with reference to developing a contractual relationship between the township and the State for the Washington School is herewith removed.