| | INTERROGATORIES | | | | | ADVISORY JUDGMENT | |
| PLAINTIFF | 11(a) Increased Gas and Electric Bills | 11(b) Loss of Personal Property | 11(c) Reduction in Rental Value of Apartment | 11(d) Other Loss of Money or Property | 11(e) Injury to Person | Verdict | Trebled |
|---|---|---|---|---|---|---|---|
| CURRY | $375. | $225. | $400. | — | — | $1,000. | $3,000. |
| BENJAMIN | 220. | 330. | 500. | — | — | 1,050. | 3,150. |
| V. HERRERA | 900. | — | 500. | — | — | 1,400. | 4,200. |
| M. HERRERA | — | — | — | — | — | NONE | — |
| B. BRANCH | 150. | — | 500. | — | — | 650. | 1,950. |
| E. SIMON | 380. | 550. | 500. | — | — | 1,500.* | 4,500. |
| B. SIMON | 500. | 50. | 500. | — | — | 1,050. | 3,150. |
| FAIRCLOTH | 470. | 100. | 500. | — | — | 1,070. | 3,210. |
| ASHE | — | 330. | 400. | — | — | 730. | 2,190. |
| BRODIE | 600. | — | 400. | — | — | 1,000. | 3,000. |
| SMITH | 250. | — | 350. | — | — | 600. | 1,800. |

*Factors (a), (b) and (c) total $1,430, not $1,500.

NEWARK PARK PLAZA ASSOCIATES, LTD., PLAINTIFF, v. CITY OF NEWARK, KENNETH A. JOSEPH, TAX COLLECTOR OF THE CITY OF NEWARK AND THE BOARD OF EDUCATION OF THE CITY OF NEWARK, DEFENDANTS.

Superior Court of New Jersey
Law Division Essex County

Decided December 8, 1987.

*Robert H. Bernstein* for plaintiff (*McCarter & English*, attorneys).

*Melvin Simon* for defendant City of Newark.

*Charles I. Auffant* for defendant Newark Board of Education.

ROSEMARY HIGGINS CASS, J.S.C.

This case presents the court with a question not previously resolved in this State: whether public policy prevents enforcement of a tax provision, in a lease between a government entity and a private landlord, requiring the government entity to pay

any real estate taxes assessed against the property which is the subject of the lease.

Lacking sufficient government-owned property to conduct its administrative operations, defendant Board of Education of the City of Newark (hereinafter "board") entered into a one-year written lease with plaintiff Newark Park Plaza Associates, Ltd. (hereinafter "Park Plaza") for the period January 1, 1982 through December 31, 1982. The lease was not renewed at the end of this term, but to date the board continues to occupy premises owned by Park Plaza at 707–721 Broad Street, Newark, New Jersey.

Despite a clause in the lease requiring board to pay all real estate taxes levied on the property directly to the taxing authority, board never paid any of the assessed property taxes. By November 1986, unpaid taxes and interest attributable to the premises amounted to $1,281,703.41, and Kenneth Joseph, the City of Newark Tax Collector, included the premises in the city's tax sale scheduled for December 1986. Park Plaza demanded that board pay the subject taxes and interest as required by the lease, but board refused payment. Park Plaza then brought a summary dispossess action in special civil part.

Park Plaza also filed a complaint in the Chancery Division to enjoin the tax sale. The chancery judge entered an order restraining the city from including the premises in any tax sale pending resolution of this dispute and consolidated this case with the summary dispossess action. While the city has not yet moved to have either party pay the subject taxes plus interest, Park Plaza and the board have cross-moved for summary judgment. The single issue is whether the tax clause in the lease is enforceable. I find the clause valid and enforceable against the board.

■■ Since the board of education continued to occupy Park Plaza's premises after expiration of its lease on December 31,

1982, the threshold question is to determine the nature of its tenancy. It is well-settled law in New Jersey that when a tenant continues to occupy a premises after the termination of a lease, his status becomes that of a month-to-month holdover tenant. *N.J.S.A.* 46:8–10; *S.D.G. v. Inventory Control Co.*, 178 *N.J.Super.* 411, 414 (App.Div.1981). The rights and duties of such a holdover tenant are governed by the terms of the expired lease, absent a contrary agreement. *Heyman v. Bishop*, 15 *N.J.Super.* 266, 269 (App.Div.1951); *cf. Trust Co. of New Jersey v. Doherty*, 117 *N.J.L.* (32 Gummere) 433 (E. & A. 1937). This rule is consonant with the general rule established throughout the country. *Heyman, supra.*

Section 3.03 of the lease entered into between Park Plaza and the board reads in part as follows:

> ... Tenant shall further pay, as additional rent for the Demised Premises, all real estate taxes ... (including interest thereon and costs and penalties incurred in connection therewith) (i) which are lawfully levied, assessed or imposed, or may become a lien on the Demised Premises during the Lease term, or (ii) which become payable during the Lease term (herein referred to as 'Real Estate Taxes').... Real Estate Taxes shall be paid directly by tenant to the taxing authority(ies) on or before the last date the same shall become due and payable without interest or penalties....

The above terms are unambiguous and a dispute over their meaning has not been raised.

. Normally, "the function of a court is to enforce a lease as it is written, absent some superior contrary public policy." *Fargo Realty v. Harris*, 173 *N.J.Super.* 262, 265–266 (App.Div.1980) (citing *Marini v. Ireland*, 56 *N.J.* 130, 143 (1970); *Mury v. Tublitz*, 151 *N.J.Super.* 39, 44 (App.Div.1977). "In the absence of such a policy, the parties are free to define rent as they choose." Fargo, *supra* 173 *N.J.Super.* at 266. In the present case, the parties have chosen to include in their definition of rent the tenant's agreement to assume the burden of the property tax in exchange for a lower overall rent payment. Does this rental arrangement violate public policy? If public

policy is violated, the lease provision would have to be held invalid.

In opposition to Park Plaza's motion for summary judgment, and in support of its own application, board submitted a number of bases for the position that provision 3.03 of the lease violates public policy. First, it looks to the education statutes, *N.J.S.A.* 18A:1-1 *et seq.*, and contends that, because these provisions do not explicitly grant local school districts the authority to pay the property taxes of a private landlord and the policy of the states has been to exempt public bodies from payment of property taxes on property owned by such public bodies, requiring payment in this case would be against public policy.

As further authority for its position, the board cites *Robinson v. Cahill*, 69 *N.J.* 133 (1975) for the general proposition that it is the State's obligation to provide a thorough and efficient system of free public education, in addition to provision of capital expenditures and current operating expenses. *Id.* at 147. In order that the Legislature comply with this constitutional mandate, the board argues, the court must strictly construe each and every statute delegating power to local districts.

Finally, the board argues that even if the court finds it liable for payment of plaintiff's property taxes pursuant to section 3.03 of the lease, public policy would nevertheless be violated since the landlord would be granted a *de facto* tax exemption at taxpayers' expense, for, if this agreement is enforced, the taxpayers of the city would have to shoulder the tax burden at 770 Broad Street.

No specific provision, case law or legislative history was cited by the board in support of its position that unless explicitly set forth, the grant of powers to local districts in *N.J.S.A.* 18A:1-1 *et seq.* is to be strictly construed. Looking to the statutes themselves, the court notes that certain provisions are helpful in determining the latitude available to local boards in securing adequate facilities. For example, *N.J.S.A.* 18A:20-2 reads:

... The board of education of any district may, in and by its corporate name, acquire, by purchase or *lease,* receive, hold, hold in trust and sell and lease real estate and personal property and may tax and condemn lands and other property for school purposes.... [Emphasis supplied]

The New Jersey Constitution places ultimate responsibility upon the State for a thorough and efficient education system. *N.J. Const.* (1947), Art. VIII, § 1, ¶ 1; *Robinson v. Cahill, supra* at 147. The New Jersey Supreme Court, in its analysis of the Public School Education Act of 1975 (*N.J.S.A.* 18A:7A–1 *et seq.*) found, within the contemplation of the Legislature, the idea that "adequate facilities are part of a thorough and efficient education." *In re Upper Freehold Reg'l School Dist.*, 86 *N.J.* 265 (1981) (citing *N.J.S.A.* 18:7A–5(f)). To procure such facilities, the Supreme Court ruled that the state board of education could compel a local board to issue bonds for a capital repair project of a public school after voters of the district had rejected referenda to finance the project. *Cf. State v. Lally*, 80 *N.J.Super.* 502 (Law Div.1963). Similarly, it was under the broad mandate to provide adequate facilities for a thorough and efficient education that the Newark board, facing a shortage of space, had authority to carry out its administrative functions in facilities rented from plaintiffs.

The statutes need not explicitly anticipate and determine the propriety of every possible rental arrangement designed to provide adequate educational facilities into which a board enters. Nevertheless, the central question is whether a tax-exempt government entity can agree to assume a private landlord's tax obligation.

Unless specifically exempted, all property within the State of New Jersey is subject to taxation. *N.J.S.A.* 54:4–1. Normally, however, property owned by public bodies such as a board of education is exempt. *N.J.S.A.* 54:4–3.3. However, situations arise when non-tax-exempt property is leased by a private owner to a public body. In some cases the property acquired by such public body may then be tax-exempt. In *Jersey City v.*

*Jersey City Parking Auth.*, 138 *N.J.Super.* 442 (App.Div.1972), aff'd 71 *N.J.* 492 (1976), the Appellate Division ruled that property leased to a parking authority by a non-tax-exempt owner came within the tax exemption granted under section 19 of the act creating parking authorities (*N.J.S.A.* 40:11A–1,–19) to property which the authority "owns or holds." Compare *N.J.S.A.* 54:4–3.3, which exempts, *inter alia,* "property" of a board of education (school district).

While *N.J.S.A.* 54:4–3.3 refers simply to the "property of the respective counties, school districts and taxing districts used for public purposes," the phrase "used for public purposes" has been defined to include both public *ownership* and public use as condition to exemption from taxation. *Jamouneau v. Division of Tax Appeals,* 2 *N.J.* 325 (1949); *Teaneck Tp. v. Div. of Tax Appeals,* 10 *N.J.Super.* 171 (App.Div.1950).

In the former case, our Supreme Court held that property leased by the City of Newark to a fire equipment company for private, commercial purposes, was not thereby exempt from taxation. The lease agreement provided that the city would pay all taxes which then were or would become a lien on the property. The Court, while stating that the agreement was not before it for review as to its validity or for interpretation as to the rights or obligations of the parties *inter sese,* went on to say:

> ... The lease also provided, as we have noted, that the city would pay taxes upon improvements to be erected by the tenant. An undertaking by the city to pay taxes does not, obviously, carry tax exemption to a structure otherwise taxable, and does not relieve the assessor from the duty to make an assessment for the purpose of taxation if the property, except for that assumption by the city, is taxable. [*Jamouneau v. Division of Tax Appeals, supra* at 330.][1]

---

[1] *Cf. N.J.S.A.* 54:4–1.10, adopted *L.*1984, effective November 2, 1984 which codifies the ruling in *Jamouneau* and states in part:

> ... the private party is subject to liability for taxation to the same extent as though he owned the property or any portion thereof, *unless the owner consents to the taxation thereof....* [Emphasis supplied]

■ Had this court been asked to determine who is primarily liable for taxes on the subject property, there is no question but that Park Plaza would be that party. *N.J.S.A.* 54:4–23; see also *Becker v. Little Ferry*, 126 *N.J.L.* 338 (1941) (finding leased land assessable against the owner). But faced with the question of liability for the taxes as between plaintiff-lessor and the board-lessee, I find no impediment to the business arrangement expressed in the tax clause. I am persuaded that the logical extension of the *Jersey City* and *Jamouneau* cases is to permit the type of clause before the court. Since there is statutory authority giving a board of education power to enter such leases (*N.J.S.A.* 18A:20–2; *In re Upper Freehold, supra*) and the freedom to define rent as it chooses (*Fargo, supra* 173 *N.J.Super.* at 266), I hold that the tax clause is valid and enforceable and that the board is liable to plaintiff for all taxes assessed against the property.

The board's final argument, that plaintiff would receive a *de facto* tax exemption if the court finds the tax clause valid, is not legally relevant. However, it should be pointed out that taxpayers would have shouldered the burden for the leased premises either through the board's assumption of taxes or through a higher base rent. Because the parties are free to define rent in the form of the tax arrangement they chose, taxpayers may eventually "assume" the tax burden, but they will have benefited in the same amount by way of a lower base rent for the board. Park Plaza is not therefore receiving a *de facto* tax exemption by virtue of this court's ruling.

Because there is no genuine issue of material fact and plaintiff is entitled as a matter of law to a ruling in its favor, summary judgment is hereby entered in favor of Park Plaza on the issue of liability and defendant's motion for summary judgment is denied. If the parties can stipulate the amount of taxes due to date, an appropriate order shall be submitted. If not, either party may request an early hearing as to the amount due.