**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3736-17T4

JOE RAINER,

    Plaintiff-Respondent,

v.

MICHAEL BARTLOW,

    Defendant-Appellant.

_____

> Argued March 4, 2019 – Decided March 26, 2019
>
> Before Judges Fasciale and Rose.
>
> On appeal from Superior Court of New Jersey, Law Division, Burlington County, Docket No. SC-001440-17.
>
> Joseph M. Pinto argued the cause for appellant (Polino and Pinto, PC, attorneys; Joseph M. Pinto, on the brief).
>
> Joe Rainer, respondent, argued the cause pro se.

PER CURIAM

    This appeal has its genesis in a one-year residential lease agreement. On September 10, 2011, plaintiff Joseph Rainer rented an apartment to defendant

Michael Bartlow, defendant's daughter, Nicole Bartlow, and her boyfriend, Matthew Dae in Delanco. Defendant never resided at the premises. In fact, paragraph twenty-six of the lease agreement restricted occupancy of the premises to "Matthew and Aiden ONLY."[1]

Defendant paid the security deposit and the first month's rent. When Nicole and Matthew fell behind in their rent payments, plaintiff sent correspondence to the couple at the premises, with a copy addressed to defendant at his own residence. Plaintiff introduced eighteen past-due letters into evidence at trial. Other than making two rent payments in December 2011 and January 2012, defendant tendered no other payments to plaintiff. Notably, defendant did not sign a separate guaranty contract, promising to be liable for the rent.

After the lease expired on September 14, 2012, Nicole and Matthew remained in the premises and plaintiff accepted their rent payments, thereby establishing a month-to-month tenancy.[2] In 2016 and 2017, plaintiff sent lease

---

[1] Because two of the parties share the same last name, we use first names to avoid confusion. We intend no disrespect in doing so. Further, Aiden is the son of Matthew and Nicole. Apparently, the lease agreement inadvertently omitted Nicole's name from paragraph twenty-six. That omission is not an issue in this matter.

[2] See N.J.S.A. 46:8-10, which provides:

extension agreement addenda to Nicole and Matthew, raising the monthly rent from $900 to $925 and $975, respectively.  The cover letter enclosing the 2017 addendum was addressed to Nicole and Matthew, and indicated that a copy of the letter was sent to defendant at his home address.[3]  Although Nicole and Matthew paid the rent increases, neither they nor defendant executed the addenda.

Eventually, Nicole and Matthew stopped paying rent.  Despite affording the couple numerous attempts to pay the rent arrears, plaintiff ultimately instituted eviction proceedings and was granted a judgment of possession on October 17, 2017.

Thereafter, plaintiff filed a small claims complaint against defendant, alleging that as the "co-signer" of the lease, defendant was responsible "for back rent . . . late charges and court fees . . . for various dates from February 2016

---

Whenever a tenant whose original term of leasing shall be for a period of one month or longer shall hold over or remain in possession of the demised premises beyond the term of the letting, the tenancy created by or resulting from acceptance of rent by the landlord shall be a tenancy from month to month in the absence of any agreement to the contrary.

[3]  The cover letter for the 2016 lease extension was not provided on appeal.

A-3736-17T4

t[o] September 15, 2017." A non-jury trial was held on November 30, 2017. Plaintiff was self-represented at the trial; defendant was represented by counsel.

At the conclusion of plaintiff's case, defendant moved to dismiss the action pursuant to Rule 4:37-2, arguing he never lived in the premises and, as such, he "did n[o]t hold over and . . . did not remain in possession" of the premises. Defendant further contended "[h]e signed on as a tenant, not as a guarantor" for the one-year lease term. Denying the motion, the trial court stated, without elaborating, it "[considered] all the evidence in favor of . . . plaintiff." See Dolson v. Anastasia, 55 N.J. 2, 5 (1969); Godfrey v. Princeton Theological Seminary, 196 N.J. 178, 197 (2008) ("A motion for involuntary dismissal only should be granted where no rational [factfinder] could conclude that the plaintiff marshaled sufficient evidence to satisfy each prima facie element of a cause of action.").

Defendant did not testify nor call any witnesses. Instead, he moved for a directed verdict pursuant to Rule 4:40-1,[4] which the court also denied. After engaging in an extended colloquy with defense counsel, the court ultimately denied the motion and awarded plaintiff $3000, representing the jurisdictional amount claimed. In doing so, the court briefly stated:

---

[4] See also R. 6:5-1 (applying Rules 4:37 and 4:40 to the Special Civil Part).

> What I have is the testimony of . . . plaintiff who testified that he felt that the lease continued on a month-to-month basis with the three people who are on the original lease. I do n[o]t see any way or any place where I can find that . . . defendant was dropped from the lease.

Following oral argument on March 26, 2018, the trial court denied defendant's ensuing motion for reconsideration. In sum, the court reiterated that because "defendant was listed as a tenant" on the initial lease agreement, he remained a tenant when Nicole and Matthew stayed in the premises at the expiration of the lease term. This appeal followed.

The sole issue raised on appeal is whether defendant was obligated for Nicole and Matthew's rent arrears, five to six years after the written lease expired. Defendant argues his obligations as a tenant ended when the lease expired on September 14, 2012. He further contends "the court made a contract of guaranty out of a lease which had expired five years before default in payment of rent by defendant's daughter and her boyfriend." Among other things, plaintiff counters defendant "was the financially responsible party to th[e] lease." Plaintiff also claims defendant was a holdover tenant pursuant to N.J.S.A. 46:8-10 and therefore was liable for the rent arrears. For the reasons that follow, we reverse the trial court's judgment.

A-3736-17T4

Our review is guided by well-established contract principles, recognizing that while we defer to the trial court's fact-finding following a bench trial, our review of its legal determinations is de novo. D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013).

"Under New Jersey law a lease is like any other written contract." Ringwood Assocs., Ltd. v. Jack's of Route 23, Inc., 153 N.J. Super. 294, 309 (Law Div. 1977), aff'd, 166 N.J. Super. 36 (App. Div. 1979); see also Cohen v. Wozniak, 16 N.J. Super. 510, 512 (Ch. Div. 1951). Courts should read contracts "as a whole in a fair and common sense manner[,]" and enforce them "based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract." Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014) (citation omitted).

The language of the contract, by itself, must determine the agreement's force and effect if it is plain and capable of legal construction. Ibid. However, "[e]ven in the interpretation of an unambiguous contract, [the court] may consider 'all of the relevant evidence that will assist in determining [its] intent and meaning.'" Ibid. (third alteration in original) (quoting Conway v. 287 Corp. Ctr. Assocs., 187 N.J. 259, 269 (2006)); see also Driscoll Constr. Co. v. State, Dep't of Transp., 371 N.J. Super. 304, 316 (App. Div. 2004) (noting that even

when an integrated contract is free from ambiguity, "evidence of the situation of the parties and the surrounding circumstances and conditions is admissible in aid of interpretation").

Here, defendant signed the lease agreement, but he was not listed as an occupant of the premises pursuant to paragraph twenty-six of the agreement. Indeed, the parties agree they never intended for defendant to occupy the premises. As plaintiff acknowledged on cross-examination:

> [DEFENSE COUNSEL:] . . . [A]t the time this initial lease was signed, you knew [defendant] was not going to reside in the property, correct?
>
> [PLAINTIFF:] Yes.
>
>     . . . .
>
> [DEFENSE COUNSEL:] . . . And, in fact, [defendant] never lived in this property, right?
>
> [PLAINTIFF:] True.
>
> [DEFENSE COUNSEL:] And when you sent [defendant] the [past due] letters, you never [really] sent him them . . . directly, you just [copied] him on the bottom [of the letters] and you sent those letters not to the address in which Nicole . . . and Matthew . . . were living, rather you sent the letters to [defendant]'s home in Delanco at a different address, correct?
>
> [PLAINTIFF:] Yes.

During his redirect testimony, plaintiff elaborated (emphasis added):

7

> [T]he lease was signed by [defendant], knowing that he was n[o]t going to live there. He was financially going to back his daughter and that is the reason I entered into the lease with them. . . . When they would fall behind in rent and [defendant] would get a letter, then the rent would come back, you know, I would get paid. So I assume[d] that [defendant] was seeing the letters and responding.

Plaintiff did not, however, present any evidence that defendant actually paid the rent after the initial lease expired. Defendant's payments were limited to the first month's rent and four consecutive months thereafter.[5]

Plaintiff's testimony underscores the intent of the parties: defendant co-signed the lease agreement, not as an occupying tenant, but rather as a purported guarantor. Although defendant argued before the trial court that he executed the lease agreement as a tenant and not as a guarantor, the terms of the lease agreement prevented his occupancy. Rather, it is undisputed that defendant's role was to assure his daughter and her boyfriend paid the rent during the one-year lease term.

Contrary to well-established settled authority, however, the parties did not execute a guaranty agreement memorializing their intention. See Peoples Nat'l

---

[5] Defendant failed to include copies of the checks in his appendix, but they were provided at our request after oral argument.

Bank v. Fowler, 73 N.J. 88, 101 (1977) ("It has long been settled law that a [guaranty] is chargeable only according to the strict terms of its undertaking and its obligation cannot and should not be extended either by implication or by construction beyond the confines of its contract."). Further, pursuant to the statute of frauds, "[a] promise to be liable for the obligation of another person, in order to be enforceable, shall be in a writing signed by the person assuming the liability . . . ." N.J.S.A. 25:1-15.

In the present matter, when the parties executed the lease agreement in September 2011, they intended for Nicole and Matthew to occupy the premises and defendant, as co-signer, to guaranty the rent for the duration of the lease agreement. Because the rent arrears at issue do not include the first year's rent, we need not reach the propriety of that arrangement. Nonetheless, we conclude defendant's obligation, if any, terminated when the lease agreement expired. If plaintiff specifically wanted defendant to be personally liable for the rent as a guarantor beyond the expiration of the lease agreement, plaintiff should have required defendant to sign a guaranty agreement. In the absence of a signed writing evidencing defendant's intent to guarantee the rent, we conclude he was not liable for the rent arrears accrued in 2016 and 2017.

A-3736-17T4

Moreover, because defendant was not permitted to occupy the premises pursuant to the terms of the lease agreement, he did not become a holdover tenant at the expiration of that agreement, notwithstanding that Nicole and Matthew continued to reside in the premises and pay rent. A "holdover tenant" is generally defined as "[s]omeone who remains in possession of real property after a previous tenancy . . . expires . . . ." Holdover Tenant, Black's Law Dictionary (10th ed. 2014); see also J.M.J. New Jersey Props., Inc. v. Khuzam, 365 N.J. Super. 325, 333-34 (App. Div. 2004); Newark Park Plaza Assocs., Ltd. v. City of Newark, 227 N.J. Super. 496, 499 (Law Div. 1987) ("It is well-settled law in New Jersey that when a tenant continues to occupy a premises after the termination of a lease, his status becomes that of a month-to-month holdover tenant."). Because defendant was not permitted to occupy the premises, we find he did not "hold over" within the meaning of N.J.S.A. 46:8-10.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3736-17T4