**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0114-19

JOSEPH BAHGAT,

      Plaintiff-Appellant,

v.

NATALE CHILDREN, LLC,
JDN PROPERTIES, LLC,
a/k/a LAND MANAGEMENT
ASSOCIATES, MICHAEL
JACONELLI, MICHELE
JACONELLI, and TAM
LENDING CENTER, INC.,

      Defendants-Respondents.

_____

        Argued September 30, 2021 – Decided November 18, 2021

        Before Judges Alvarez and Mitterhoff.

        On appeal from the Superior Court of New Jersey, Chancery Division, Middlesex County, Docket No. C-000066-18.

        Joseph A. Bahgat, appellant, argued the cause pro se.

        Frederick B. Zelley argued the cause for respondents Natale Children, LLC, and JDN Properties, LLC, a/k/a

Land Management Associates (Bisogno, Loeffler & Zelley, LLC, attorneys; Frederick B. Zelley, of counsel and on the brief).

PER CURIAM

In this landlord-tenant and special civil part action, plaintiff Joseph Bahgat appeals from (a) a July 25, 2019, order terminating the contract of sale between the parties and awarding defendant a judgment for possession:  and (b) an August 2, 2019, order discharging a lis pendens and awarding attorney's fees. We affirm, substantially for the reasons set forth in Judge Vincent LeBlon's well-reasoned oral opinions.

We discern the following facts from the record.  In June 2015, plaintiff, a licensed attorney, leased a luxury townhouse from defendants.  The two-year lease began in July 2015 and included an option to purchase the townhouse at the end of the lease.  In July 2017, plaintiff did not renew, and he was thereafter considered a holdover tenant by the operation of law.[1]  He continued to rent the townhouse on a month-to-month basis but did not exercise his right to purchase.

---

[1]  A "holdover tenant" is generally defined as "[s]omeone who remains in possession of real property after a previous tenancy . . . expires[.]"  Black's Law Dictionary 1769 (11th ed. 2019); see also Newark Park Plaza Assocs., Ltd. v. City of Newark, 227 N.J. Super. 496, 499 (Law Div. 1987) ("It is well-settled law in New Jersey that when a tenant continues to occupy a premises after the termination of a lease, his status becomes that of a month-to-month holdover tenant.").  Accordingly, plaintiff's

On April 12, 2018, defendants filed an order to show cause (OTSC) against plaintiff in the Special Civil Part and a dispossession action in the Landlord-Tenant Section. The dispossession action was based on plaintiff's nonpayment of rent for several months. The OTSC sought to compel plaintiff to permit the showing of the premises after he had failed to exercise his purchase option.

In response, on April 30, 2018, plaintiff filed an OTSC and verified complaint in the Chancery Division alleging that: (a) plaintiff was entitled to declaratory judgment stating that the purchase option was valid and enforceable and defendants could not evict plaintiff (count one); (b) defendants breached the implied covenant of good faith and fair dealing (count two); (c) defendants breached the covenant of quiet enjoyment (count three); (d) promissory estoppel (count four); (e) invasion of privacy (count five); (f) defamation (count six); (g) violation of Gramm-Leach-Bliley Act and N.J.S.A. 56:8-161 et seq. (count

_____

tenancy converted to a holdover tenancy on a month-to-month basis. See N.J.S.A. 46:8-10.

A-0114-19

seven); and (h) civil conspiracy (count eight).  That same day, plaintiff filed a notice of lis pendens.[2]

On May 15, 2018, the return date of the OTSC, the parties met with Judge LeBlon and attempted to mediate a resolution of the case.  Later that day, the parties appeared before Judge LeBlon and entered the basic terms of a negotiated settlement on the record, under which plaintiff could purchase the premises if he satisfied certain conditions.  The following day, defendants' counsel forwarded a proposed consent order to plaintiff memorializing the terms of the settlement in greater detail.  The parties continued negotiations until plaintiff signed the final version June 16, 2018.

On June 18, 2018, Judge LeBlon signed the final consent order.  The key provisions of the consent agreement required plaintiff to:  1) bring himself current in his rent;[3] 2) negotiate and enter into a formal contract to purchase the

---

[2] A lis pendens is defined as "[a] notice, recorded in the chain of title to real property, required or permitted in some jurisdictions to warn all persons that certain property is subject matter of litigation, and that any interests acquired during the pendency of the suit are subject to its outcome." Black's Law Dictionary 1117-18 (11th ed. 2019); N.J.S.A. 2A:15-6 to 15-17.

[3] Plaintiff owed defendants $11,600 in overdue rent for the months of February, March, April, and May of 2018 at a rate of $2,900 per month. Defendants agreed to dismiss the April 2018 dispossession action against plaintiff in exchange for payment of the overdue rent.

A-0114-19

premises with specified terms;[4] 3) obtain a formal mortgage commitment by July 16, 2018; and 4) close title by August 15, 2018.

In addition, paragraph 4 of the consent order required plaintiff to timely pay his rent "without deductions" for each month post-settlement that he continued to reside in the townhouse. Paragraph nine provided that if defendant properly terminated the contract in accordance with the agreement's terms, plaintiff would vacate by August 31, 2018. If plaintiff failed to vacate, paragraph nine indicated defendant would be entitled to "a [j]udgment for [p]ossession of the [p]remises and to the immediate issuance of a [w]arrant for [r]emoval, by authority of this [c]onsent [o]rder, upon [d]efendant's submission to the [c]ourt a [c]ertification confirming [p]laintiff's failure to vacate."

With respect to attorney's fees, the agreement provided that "[t]he parties' claims for attorney['s] fees shall be held in abeyance unless and until the issue is not resolved amicably by the parties and an appropriate application is made to the [c]ourt."

---

[4] Plaintiff did negotiate and sign a contract to purchase the property. The contract required, consistent with the settlement agreement, that plaintiff obtain a mortgage commitment by July 16, 2018. The contract further provided if plaintiff was unable to obtain financing by that date, the seller could terminate the contract.

A-0114-19

Plaintiff brought himself current on his past-due rent, but immediately violated paragraph four of the consent order by failing to pay his June and July rent on time. He further violated the settlement terms by unilaterally deducting $597 – the alleged cost of a microwave and repairs to an electrical panel. On July 23, 2018, defendants emailed plaintiff to advise that if he did not pay the remaining $597, defendants would terminate the contract for sale and seek possession.

Plaintiff also violated what was arguably the central term of the agreement by failing to secure a mortgage commitment prior to July 16, 2018. For that reason, on July 25, 2018, defendants advised plaintiff that the contract was being terminated and submitted a proposed order to Judge LeBlon to terminate the contract of sale and enter judgement of possession for defendants.

Judge LeBlon directed the parties to appear before him on July 26, 2018. Plaintiff's mortgage representative, Ted Ark (Ark) of Golden Mortgage Corporation, testified by telephone that although plaintiff had consulted with him in the prequalification stage of obtaining a mortgage, plaintiff had not yet been approved by underwriting and no firm mortgage commitment had issued.[5]

---

[5] Plaintiff's assertion that Ark testified that he had issued a firm mortgage commitment is not supported by the record.

A-0114-19

Ark could not confirm that a commitment would issue before the August 15, 2018, closing deadline. Based on Ark's testimony, Judge LeBlon granted defendants' motion for termination of the contract and possession of the premises. He noted that plaintiff had failed to secure a mortgage commitment in violation of the consent agreement, stating:

> this contract is specifically contingent upon buyer at buyer's sole cost and expense no later than July [sixteenth] of 2018, obtaining and delivering to seller's attorney a firm mortgage commitment for a mortgage on the premises in the amount of $440,000 at a prevailing rate of interest for a term of [thirty] years with only standard conditions; in parentheses, i.e. with no unusual conditions.
>
> I find and I believe that [plaintiff] has not met that term of the contract. It is not a [–] from the testimony of Mr. Ark . . . a firm mortgage commitment. He specifically said it was not. Even if it was considered a mortgage commitment, it does have an unusual condition requiring that computations be made, which I just read. So I find and I believe that [plaintiff] has not met [–] not met the terms of that mortgage commitment.
>
> [(2T66:19-67:11).][6]

---

[6] After Judge LeBlon awarded defendants possession of the premises, plaintiff sought a temporary stay pending appeal, which the judge denied. On August 30, 2018, plaintiff filed a second OTSC. This application was denied by Judge LeBlon on September 4, 2018. On October 1, 2018, plaintiff filed an application seeking

A-0114-19

On July 31, 2018, defendants' counsel emailed plaintiff and his real estate attorney a proposed discharge of the notice of lis pendens, and asked plaintiff to notify him of any objections. Plaintiff did not respond to this request. On August 21, 2018, defendants' counsel re-sent the July 31, 2018, email and proposed form of order. On September 16, 2018, defendants' counsel re-sent the July 31, 2018, and August 21, 2018, emails and proposed form of order to plaintiff. Defendants' counsel warned plaintiff that he would involve the court if he did not receive an answer.

On July 16, 2019, defendants moved to discharge plaintiff's notice of lis pendens and for entry of a monetary judgment in accordance with the June 18, 2018, consent order. Judge LeBlon granted the application, finding that:

> the applicable portion of the statute is 2A:15-17 which is entitled "Discharge of lis pendens when judgment is paid, satisfied or action settled or abandoned."
>
> And in the appropriate portion of the [–] that statute, it provides that if the judgment has been paid, satisfied, performed or has [–] or the action has been settled, but the party who filed the notice of lis pendens fails to file the warrant stated, the [c]ourt having jurisdiction of the action may, upon being satisfied of

---

emergent relief from this court, which we denied. On October 8, 2018, plaintiff sought emergent relief from the Supreme Court, which was also denied.

A-0114-19

the fact of such payment, satisfaction, performance, settlement or abandonment and upon such notice may by its order direct, that the notice of <u>lis pendens</u> be discharged of all claims or equities set up in the complaint in the action.

Here I find that the matter was indeed settled. And in the attachment to the certification of the defendant Joseph Natale is the order of June [eighteenth] of 2018. The paragraph [fifteen] of that indeed provides subject to the enforcement of the terms of the consent order, all complaints and/or counterclaims pled or which could have been pled, and any and all claims raised or which could have been raised by [plaintiff] against [defendant], and others in this action, in the action bearing docket number DC and the LT docket number, other than the attorney fee claim which is addressed in paragraph [eleven] above, shall be and same hereby are dismissed and released without cost to any party. The dismissal and release being with prejudice as to all claims substantively settled by the terms of the consent order and without prejudice to any other claims.

Judge LeBlon also determined that defendants were entitled to attorney's fees in the amount of $27,012.57 based on plaintiff's violations of the lease agreement and consent order. He noted that:

[a]ll of the actions taken by the defendants were in accordance with the agreements between the parties. There is no basis for the [c]ourt not to grant the attorney's fees. They were all incurred I find and [–] and I believe reasonably given the actions of the plaintiff.
And indeed the argument that Mr. Zelley that was in his certification that the plaintiff never prevailed on

[–] the merits is accurate. [Plaintiff] was simply trying to delay the resolution of this matter and delay his removal from the property. I [–] I don't find any of his [–] his actions to be with merit. And indeed they were just simply to delay the ultimate resolution to this matter.

Plaintiff now appeals and presents the following issues for our review.

POINT I

THE TRIAL COURT ERRED BY SUA SPONTE DISMISSING PLAINTIFF'S AMENDED VERIFIED COMPLAINT AND THEN LATER HOLDING THAT PLAINTIFF SETTLED HIS CLAIMS AGAINST THE LANDLORD DEFENDANTS.

POINT II

THE TRIAL COURT'S [JULY] 26, 2018 ENTRY OF JUDGMENT IS NOT SUPPORTED BY THE RECORD, AND THE HEARING WAS A FUNDAMENTALLY UNFAIR PROCEEDING THAT VIOLATED PLAINTIFF'S DUE PROCESS RIGHTS, AS WELL AS N.J.S.A. [] 2A:18-61.1.

A. The Anti-Eviction Act prohibits a trial court from removing a tenant without strict compliance of The Act, and without first holding a trial and finding one of the grounds for eviction enumerated in N.J.S.A. [ ] 2A:18-61.1.

B. It was improper for the trial judge to serve as a mediator for the case, and then turn around and assume the roles of fact finder and judge of the law.

<u>POINT III</u>

THE TRIAL COURT ERRED AS A MATTER OF
LAW BY AWARDING ATTORNEY'S FEES TO THE
LANDLORD WITHOUT FIRST HOLDING A TRIAL,
HAVING EVIDENCE THAT THE TENANT
BREACHED THE LEASE, AND FINDING THAT
THE COUNSEL FEES CLAIMED BY THE
LANDLORD WERE INCURRED AS A DIRECT
RESULT OF THE TENANT'S BREACH(ES) OF ONE
OR MORE OF THE LEASE PROVISIONS.

<u>POINT IV</u>

THE TRIAL COURT ERRED BY DISCHARGING
THE NOTICE OF LIS PENDENS BECAUSE THE
CASE WAS NOT SETTLED.

Plaintiff's arguments lack merit. We affirm.

On May 15, 2018, faced with imminent eviction, plaintiff elected to settle the dispossession matter with his landlord rather than proceed to trial. At that juncture, plaintiff had limited options as a holdover tenant who was three months in arrears on his rent. Nor had he exercised his right to purchase the premises in July 2017 when the lease expired. Based on plaintiff's professed eagerness to purchase the property, however, the landlord agreed to afford plaintiff a limited opportunity to consummate the purchase of the townhouse.

We reject plaintiff's argument that the court violated his procedural rights under the Anti-Eviction Act by terminating the contract and awarding defendant

11

possession.  Having voluntarily executed the consent order memorializing the parties' settlement, plaintiff's right to possession was governed solely by the terms of that consent order.  We treat settlement agreements like contracts, which are "to be enforced, as written, absent a demonstration of fraud or other compelling circumstances."  Willingboro Mall, Ltd. v. 240/242 Franklin Ave., L.L.C., 421 N.J. Super. 445, 451 (App. Div. 2011).  The court did not err in enforcing the mortgage contingency provision of the order as written.

Plaintiff next argues that the judge – having assisted the parties in reaching a settlement-in-principle and thereafter signing the consent order executed by the parties – was precluded from enforcing the settlement agreement.  We are unpersuaded.

Minkowitz v. Israeli, 433 N.J. Super. 111, 142, (App. Div. 2013), on which plaintiff relies, is factually inapposite.  In Minkowitz, an arbitrator appointed under the New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to 2A:23B-32, assumed the role of mediator, wrote up a mediation agreement, then resumed the role of arbitrator and converted the mediation agreement into a binding arbitration award.  In Minkowitz we reasoned a mediator could not later serve as an arbitrator because "the differences in the roles of these two types of dispute resolution professionals necessitate that a mediator, who may become privy to

12

party confidences in guiding disputants to a mediated resolution, cannot thereafter retain the appearance of a neutral factfinder necessary to conduct a binding arbitration proceeding." Minkowitz, 433 N.J. Super. at 142.

In Kernahan v. Home Warranty Administrator of Florida, Inc., 236 N.J. 301, 323 (2019), the Supreme Court also addressed the differences between mediation and arbitration. The Court highlighted that "a mediator does not reach a final decision on the matter. Instead, the mediator, albeit remaining neutral, encourages the participants to resolve their differences and reach an agreement." Ibid. Conversely, "[t]he object of arbitration is the final disposition, in a speedy, inexpensive, expeditious, and perhaps less formal manner, of the controversial differences between the parties." Id. at 324 (quoting Hojnowski v. Vans Skate Park, 187 N.J. 323, 343 (2006)).

Although both Minkowitz and Kernahan were specific to the context comparing the roles of a mediator and an arbitrator, and they did not address the role of a judge who participates in settlement discussions, we do not distinguish them on that basis. Indeed, Kernahan expressly stated that "[m]uch like a judicial factfinder, '[a]rbitrators essentially weigh evidence, assess credibility, and apply the law when determining whether a party has proven his or her request for relief.'" Ibid. (quoting Minkowitz, 433 N.J. Super. at 144). We

conclude, however, that a critical factual distinction renders Minkowitz inapplicable.

In this case, Judge LeBlon acted as "mediator" in conferencing about a possible settlement. When the case settled, there was no need for an "arbitrator," or trial judge, to adjudicate the dispossession case, and Judge LeBlon did not act in that capacity.[7] Rather, after the settlement, his sole role was to enforce the terms of the settlement to which the parties had agreed. We conclude that the judge's enforcement actions were entirely appropriate and reject plaintiff's assertions to the contrary.

We also reject plaintiff's claim that he was deprived of due process because the judge agreed to hear the application on short notice. Judge LeBlon indicated that he was exercising his discretion pursuant to Rule 1:1-2 to hear the matter on short notice because the parties had been before him only ten days earlier, at which time plaintiff indicated that he had a firm mortgage commitment. Moreover, when asked, plaintiff could not identify any relevant evidence that would be forthcoming if he was afforded additional time to respond.

---

[7] The prohibition on judges participating in failed settlement discussions and then participating as the trial judge is limited to bench trials. In a jury trial, the judge is not the factfinder, so the prohibition does not apply.

THE COURT:  Let me just ask [plaintiff], what [–] what [–] what more do you need time for?  You've been given an opportunity to be heard.  You had notice and you're having a hearing.  What [–] what more would you have done to prepare for this today?

[PLAINTIFF]:   I would have gotten all of the [–] emails, text messages [–]

THE COURT: And you have all of them on your computer [–]

[PLAINTIFF]: [–] from the landlord.

THE COURT: [–] there that [–] yeah, you have in front [–]

[PLAINTIFF]: [–] I have some [–]
THE COURT: [–] of you; right?

[PLAINTIFF]: [–] I have some of them.

THE COURT:  Okay.

[PLAINTIFF]: Some of them I've saved screenshots of and they're in the [–] you know, I would have printed them out with – you know, with [–] with captions [–] with labels so that [–]

THE COURT: And what would have been relevant?

[PLAINTIFF]: It would have shown that the [–] that this is [–] this is how we've been [–] this is how the parties have been corresponding for the [–]

THE COURT: Under the[–]

[PLAINTIFF]: [–] past three years.

A-0114-19

THE COURT: [–] terms of the lease, not [–] not [–] not under the terms of the contract.

[PLAINTIFF]: Correct.

The judge correctly determined that the proffered evidence, which relates to the parties' "course of conduct" over the three years preceding the settlement, has no relevance to whether plaintiff timely obtained a mortgage commitment. Rather, the correspondence relates to plaintiff's deductions from his rent over the years for various repairs to the townhouse. Plaintiff claims this shows he did not violate paragraph four of the consent order by unilaterally deducting the $597 for the microwave because making such deductions was routinely permitted under the lease.

The judge, however, correctly noted that the terms and related practices under the lease did not govern. Rather, the terms of the consent order superseded the terms of the lease, and the order required timely payment without deductions. Regardless, the judge did not terminate the contract based on the deduction from the rent; rather, his decision was based entirely on plaintiff's indisputable failure to timely obtain a mortgage commitment.

Plaintiff also argued that the emails would have shown he was under pressure to agree to the terms and that defendant "used the date" to leverage a settlement.

16

THE COURT: Okay; okay. Anything else that you would have brought with you [other than] the exhibits? What else?

[PLAINTIFF]: The [–] well I would have brought the [–] something from my [–] my real estate attorney for my [–] who's doing the closing, with his negotiation [–] something with his correspondence with Mr. Zelley about the inspection report and the [–] also the red lined versions of the contract that went back and forth to show [–]

THE COURT: And how would [–] how would that have been relevant?

[PLAINTIFF]: To show that Mr. Zelley waited until the last minute and then used [–] used the [–] the date as a [–] as a means to [–] to [–] to force the contract, so that [–] because the consent order said that it had to be signed by June [first].

THE COURT: Negotiations of the contract would not be relevant, so that [–] that wouldn't have made a difference here at all. Anything else? [8]

[PLAINTIFF]: Off the top of my head, no.

[(2T38:2-40:2).]

We agree with Judge LeBlon that the details of the settlement negotiations, which occurred between May 15 and June 16, are not relevant to whether

---

[8] Moreover, the month-long negotiation belies any assertion that plaintiff was unduly pressured to settle. Rather, the record reflects that after a month of negotiations, defendant indicated it would make no further concessions. Had plaintiff not agreed with the final version, he could have opted to proceed to trial.

plaintiff timely obtained a mortgage. Further, because plaintiff failed to identify any relevant evidence that would be produced given additional time, the judge did not abuse his discretion by hearing the matter on short notice pursuant to Rule 1-1:2.[9]

Plaintiff's argument that a trial must occur before attorney's fees may be awarded is without merit. In <u>Community Realty Management, Inc. for Wrightstown Arms Apartments v. Harris</u>, the Supreme Court explained that:

> [i]t is clear that a tenant in New Jersey may contractually agree to pay reasonable legal fees related to an eviction. It is equally clear that New Jersey courts are required to enforce the provisions of a lease in the absence of contravening public policy. Courts generally uphold provisions in leases calling for the payment of reasonable attorneys' fees. Courts also generally enforce provisions that define rent to include damages in absence of contravening public policy. The written lease, however, must expressly permit a landlord to recover reasonable attorney's fees in a summary dispossess proceeding before a landlord/tenant may consider those expenses as additional rent.
>
> [155 N.J. 212, 234 (1998) (citations omitted).]

---

[9] Both parties supplemented the record with the parties' communications referenced by plaintiff. Because we find plaintiff's own proffer sufficient to justify the judge's proceeding on short notice, we find it unnecessary to discuss the contents at length. We note, however, that we observed nothing to contradict or undermine the judge's finding that neither the parties' course of conduct nor the settlement negotiations are relevant to whether plaintiff timely obtained a mortgage commitment.

Here, plaintiff and defendants clearly provided for payment of attorney's fees in the lease agreement. Specifically, paragraph ten states that "[t]he [t]enant is liable for all damages caused by the [t]enant's violation of any agreement in this lease. This includes reasonable attorney's fees and costs." Plaintiff, by virtue of the consent order, agreed to hold attorney's fees in abeyance. When plaintiff violated the terms of the consent order, the motion judge awarded defendants attorney's fees in accordance with paragraph eleven of the consent order. He determined that the attorney's fees sought by defendants were "warranted" and "fair and reasonable." The judge found, correctly, that all the fees were incurred in enforcing the terms of the lease, including defending against unsuccessful Orders to Show Cause and emergent applications to this court and the Supreme Court. We discern no error in the judge's award of attorney's fees.

We conclude that plaintiff's argument that the case was not settled, as well as any of the parties' remaining arguments to the extent we have not addressed them, are without sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0114-19