**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2159-22

SAMUEL BARRESI,

       Plaintiff-Appellant/
       Cross-Respondent,

v.

FZG ENTERPRISES, LLC, d/b/a
BIG LEAGUE DREAMS, a/k/a
FGZ ENTERPRISES, LLC and FXG
ENTERPRISES, LLC, GARY
LIGUORI, ZANE KROMISH,
and FRED VINSON,

       Defendants-Respondents/
       Cross-Appellants.

_____

Argued November 19, 2024 – Decided March 28, 2025

Before Judges Susswein and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-1201-20.

Sandford F. Schmidt argued the cause for appellant/cross-respondent (Law Office of McInerney & Schmidt, LLC, attorneys; Sanford F. Schmidt, on the briefs).

Mark P. Asselta argued the cause for respondents/cross-appellants Zane Kromish and Fred Vinson (Brown & Connery, LLP, attorneys; Mark P. Asselta, on the briefs).

Law Offices Bennie & Bennie, attorneys for respondents/cross-appellants FZG Enterprises, LLC and Gary Liguori, join in the brief of respondents/cross-appellants Zane Kromish and Fred Vinson.

PER CURIAM

This landlord-tenant matter arises from a dispute concerning a commercial lease (the Lease) for a premises to be used as an interactive sports entertainment facility. The landlord and plaintiff Samuel Barresi appeals from a Law Division order entered by Judge Sander Friedman denying reconsideration of his July 29, 2022 order that granted only partial summary judgment in plaintiff's favor. Judge Friedman found codefendant FZG Enterprises, LLC, d/b/a Big League Dreams, (FZG) liable for breaching the Lease, and held defendants Gary Liguori, Zane Kromish, and Fred Vinson liable for unpaid rent as individual guarantors. Plaintiff contends the judge erroneously determined that defendants' obligations terminated on May 11, 2016. Instead, he claims the judge should have held that their obligations as guarantors continued until April 2020.

Defendants cross-appeal Judge Friedman's order, asserting they never personally guaranteed FZG's lease obligation because, among other reasons, the

2

A-2159-22

Lease was ambiguous and improperly formatted.  In the alternative, they argue their alleged personal obligations under the signed Lease ended at least before April 2020, either when the initial lease terminated in 2016 or argued for the first time on appeal, by subsequent revocation.  After carefully reviewing the record in light of the parties' arguments and governing legal principles, we affirm Judge Friedman's rulings.

I.

We discern the following facts and procedural history from the record. On February 20, 2015, the parties executed a month-to-month commercial lease for a property located in Medford, New Jersey.  The Lease provided for an increased rent payment plan over the course of a year, effective March 1, 2015, starting at $5,250 per month and increasing to $9,250 from December 1 through February 1, 2016.  Throughout the Lease, which plaintiff drafted, FZG is referred to as the tenant.

Under the Lease, FZG was responsible for building maintenance and repair, utilities charges, maintaining insurance, and the landlord's attorney's fees and costs to enforce the Lease.  At the end of the Lease term, FZG was required to surrender the premises and "peaceably deliver up and surrender possession of the premises to the Landlord at the expiration date or sooner of this Lease,

3

promptly delivering to Landlord, at its office, all keys to the building." The Lease also included an Integration Clause that expressly provided that its terms "may not be modified or terminated except by agreement in writing signed by both of the parties hereto."

Importantly for purposes of this appeal, the last paragraph of the Lease on page eleven stated: "IN WITNESS WHEREOF, the parties hereto have caused these presents to be executed the day and year first above written. Additionally, the undersigned jointly and severally each hereby personally guarantee the obligations of the Tenant herein." The Lease included in print "FXG Enterprises, LLC"[1] under the signature lines for Kromish and Vinson.

Plaintiff and FZG agreed to continue the Lease with the understanding that rent would remain $9,250 per month. Plaintiff signed and mailed a letter to FZG, dated February 10, 2016, indicating this agreement. Plaintiff's letter, which Liguori initialed, read:

> Dear Gary,
>
> With reference to our discussion on subject, we hereby agree to continue with the existing Lease, executed February 20, 2015.
>
> The [r]ent will remain at the current $9,250[] per month.

---

[1] FXG Enterprises, LLC appears to be an alter ego of FZG.

> Please initial your approval and return a copy of this letter.

On April 11, 2016, FZG sent a letter (the termination letter) to plaintiff.[2] FZG notified plaintiff that it "is terminating the [L]ease" and noted "[a]s stated in the [L]ease, FZG has the right to terminate with [thirty] days written notice. This termination shall commence [thirty] days from the date of being received by Avante Associates."

Between May 5 and 6, 2016, plaintiff and Liguori discussed the matter. During these conversations, plaintiff alleges he agreed to give a "courtesy discount" of $3,000 in rent per month from May to September 2016 in exchange for FZG's recission of its earlier notice of termination. Plaintiff sent a follow up letter to FZG on May 6, 2016. Plaintiff did not request a reply to or initial on the letter, but wrote:

> Dear Gary,
>
> With reference to our discussion, yesterday [February 5, 2016], we hereby agree to continue with the existing Lease, executed February 20, 2015 and subject to [e]xtension.

---

[2] We note that on the motion for summary judgment now before us, Judge Friedman ruled "[FZG] effectively terminated the [L]ease with plaintiff when [Liguori] sent notice on April 11th, 2016, advising the plaintiff landlord that [FZG] [is] terminating the [L]ease."

You hereby rescind your [n]otice to [t]erminate [the] Lease dated April 11, 2016.

Landlord shall [g]rant a [c]ourtesy [d]iscount of $3,000. Per month from the existing rent of $9,250[] per month for the [m]onths of: May, June, July, and August of 2016. Rent shall return to $9,250[] for September 2016.

Vinson and Kromish sold their interest in FZG to Liguori and signed sale agreements in November and December 2016.

Plaintiff's next letter, dated January 12, 2019, was addressed to Kromish and Vinson, and specified that "[t]his [l]etter concerns the [d]efaults and [a]rrearages for which you are jointly and severally responsible and . . . we must discuss them and come to an amicable resolution in writing, signed by all three Guarantors, no later than January 20, 2019." This prompted a series of emails between the parties concerning the Lease terms and defendants' liability, including an email advising plaintiff that Kromish and Vinson sold their interest in FZG several years ago.

On March 7, 2019, plaintiff filed a complaint for eviction against FZG for arrears as of March 5, 2018 in the sum of $108,973. On April 17, 2019, shortly before the eviction trial was scheduled, plaintiff and FZG agreed to a consent judgment allowing FZG to stay in premises. FZG—via Liguori acting on FZG's behalf—and plaintiff signed the consent judgment. It stated, "the Tenant shall

6

pay the Landlord $112,729, which Tenant admits is now due and owning." The parties agreed FZG would pay $9,250 in rent per month until the agreement is over, meaning its over when both the full $112,729 and other payments required by the rental agreement are paid.

In addition, the consent judgment required that any subtenant rent was given to plaintiff but credited to the amounts FZG owed. FZG was required to make an immediate payment of $5,300 followed by monthly payments of $2,000 starting May 1, 2019 and continuing for a year. The remaining balance was due on May 1, 2020, unless otherwise agreed. The final paragraph of the consent judgment stated "[a]ll other terms of the Lease dated [February 20, 2015] remain in effect."

Before the consent judgment was filed, on March 27, 2019, Kromish's and Vinson's counsel replied to plaintiff's January 12, 2019 letter, stating they "hereby revoke again . . . any personal guarantees that they have issued in the past that pertain to any lease obligations owed by FZG." They reasoned "the termination letter" sent in 2016 ended the Lease and plaintiff's requested amounts incurred after that date.

On March 19, 2020, FZG gave plaintiff notice that it was terminating the Lease in a signed letter, stating: "[a]s discussed this morning, in response to the

Corona virus including government policies and customer concerns I am hereby giving notice to terminate my lease." Consequently, plaintiff's law firm sent a letter to defendants dated April 29, 2020, conveying amounts due and requesting a proposal for liquidating the balance within ten days of receipt. Defendants never sent a proposal.

On June 18, 2020, plaintiff filed a two-count complaint alleging claims for: unpaid rent against FZG (count one)[3] and unpaid rent against defendants pursuant to their alleged personal guarantees for FZG's lease obligations (count two). Mediation was unsuccessful.

On November 19, 2020, Kromish and Vinson filed their answer and affirmative defenses in which they denied liability and sought dismissal of count two of plaintiff's amended complaint. In addition, FZG and Liguori filed their answer and affirmative defenses in which they denied liability for any amount due to plaintiff. In January 2021, Kromish and Vinson also filed a cross-claim for indemnity against FZG and Liguori based on a bill of sale agreement regarding their interests in the business, which FZG and Liguori subsequently answered. Thereafter, written discovery and depositions took place.

---

[3] We note that plaintiff's claims against FZG in count one are not challenged in this appeal.

A-2159-22

On December 15, 2022, plaintiff moved for partial summary judgment for damages until May 1, 2020. On January 11, Vinson and Kromish filed a cross-motion for summary judgment requesting the trial court find defendants not personally liable for guarantees under the Lease or, in the alternative, that their guarantor obligations ceased with "the termination letter" FZG sent in 2016. FZG and Liguori similarly filed opposition to plaintiff's motion for partial summary judgment, arguing plaintiff was not entitled to the requested relief.

On July 29, 2022, Judge Friedman heard oral arguments and found:

> [T]he language in Page 11 of the [L]ease was clear and unequivocal and established a guarantee agreement between [defendants] and . . . plaintiff, the landlord. Specifically, the [L]ease stated: "The undersigned, jointly and severally[] each hereby personally guarantee the obligation[s] of the tenant herein." Immediately below this proceeding provision existed three signature lines and Gary Liguori[,] FZG Enterprises, LLC; Fred Vinson, FZG Enterprises, LLC; and Zane Kromish, FZG Enterprises, each one of those lines have separate addresses . . . .

The judge reasoned that:

> A guaranteed agreement should be strictly construed, but the terms of the guarantee agreement must be read in the light of commercial reality and in accordance with . . . the reasonable expectations of the persons in the business community involved in the transactions in the type involved. [Ctr.] 48 Ltd. [P'ship] v. May [Dep't] Stores [Co.], 355 N.J. Super. 390[,] 405 (App. Div. 2002). As such, the [c]ourt finds that [defendants] each

guaranteed the obligations of the tenant, FZG Enterprises, when they signed the [L]ease.

Furthermore, Judge Friedman stated "[w]ith respect to the termination date of the 2015 lease agreement, the [c]ourt finds that [FZG] effectively terminated the [L]ease with plaintiff when [] Liguori, sent notice on April 11th, 2016 advising the plaintiff landlord that [FZG] [is] terminating the [L]ease."

In addition, Judge Freidman addressed N.J.S.A. 25:1-15, the statute of frauds provision for leases, and added that the oral conversations between plaintiff and FZG were not put in writing or signed by the guarantees. The judge determined plaintiff's letter stating that defendants rescind their notice to terminate did not reinstate the Lease terms; however, he reasoned that, given FZG's continued occupancy and rent payments, FZG became a holdover tenant. On those grounds, Judge Friedman granted partial summary judgment for plaintiff and against FZG for $100,965 in damages, denied defendants' cross-motion for summary judgment, and held defendants liable for damages accrued before May 11, 2016. The corresponding orders were filed on August 1, 2022.

Plaintiff then filed a motion for reconsideration on August 24, 2022. Defendants also filed a cross-motion requesting an order amending the previous summary judgment orders to confirm that they, as individual guarantors, have no liability for any amounts due from FZG.

On September 23, 2022, Judge Friedman rendered his second oral opinion, denying the motion for reconsideration because "[t]here doesn't seem to be in this case new information" and plaintiff did not meet the standards for reconsideration. He then granted and denied in part defendants' cross-motion and amended the August 1, 2022 orders to provide that the claims against defendants were limited to possible liability for property damages to be determined at trial.[4] The orders were filed accordingly on November 29, 2022.

This appeal followed. We note that, on March 23, 2023, plaintiff filed an amended notice of appeal, challenging: (1) paragraph two of the final consent judgment (which provides that "[a]ll claims against [defendants] are dismissed with prejudice"); (2) paragraph three of the order on plaintiff's motion for partial summary judgment from August 1, 2022; (3) paragraph two of the August 1,

---

[4] On February 7, 2023, a final judgment by consent was filed with a different judge in which, among other things, the parties agreed to dismiss all claims against defendants with prejudice but reserved the right to appeal and vacate judgment. The final judgment also specified in part,"[i]f on appeal, it is determined that [defendants] guaranteed the obligations of [FZG] under the [L]ease and that such remained in effect after May 10, 2016, then (a) [j]udgment shall be entered for [p]laintiff and against [defendants] finding such defendants liable as guarantors for judg[]ments already entered against [FZG] in the amounts of $100,965.77 and $37,649.31. . . ." Although the final consent judgment would seem to render this matter resolved, in accordance with the parties' reservation of the right to appeal notwithstanding the consent judgment, and because no party argues that this appeal and cross-appeal are moot, we elect to hear the appeal and cross-appeal.

2022 order on defendants' cross-motion for summary judgment; and (4) the order denying plaintiff's motion for reconsideration and amending the summary judgment order from November 22, 2022. Plaintiff's request for partial summary judgment includes a judgment against defendants for $100,956.77 and $37,649 in attorney's fees, and remand for trial as to plaintiff's remaining damages that incurred after April 20, 2020.

Kromish and Vinson filed a notice for cross-appeal, which Liguori later joined, asking us to reverse Judge Friedman's August 1, 2022 summary judgment order which ruled that the execution of the Lease created personal liability. In the alternative, they request we either affirm the summary judgment ruling regarding termination or, if this court finds the Lease was not terminated in 2016, hold that defendants revoked any guarantees before the alleged payment obligations arose.

In view of the number and complexity of the issues raised by the parties, we reproduce the point headings in their respective appeal briefs.[5] Plaintiff raises the following contentions for our consideration:

> POINT I
>
> THE [TRIAL] COURT ERRED WHEN IT RULED THE GUARANTEES WERE TERMINATED ON

_____

[5] To comport with our conventions, we revise and omit certain points.

MAY 11, 2016.  ALL OF THE UNDISPUTED FACTS INDICATE THAT THERE WAS A MODIFICATION OF THE LEASE, NOT A TERMINATION.

    A. Factually there was no termination of the Lease or guarantees.

    B. The Statute of Frauds, N.J.S.A. 21:1-15 does not apply.

    C. The [r]equirement that any modifications must be in writing was waived.  (Not raised [at the trial court]).

    D. Offer and Acceptance, Partial Performance, and Practical Construction.

    E. Modification of the [L]ease does not terminate the liability of the guarantors.  (Not raised [at the trial court]).

    F. FZG was not a holdover tenant.

POINT II

THE [TRIAL] COURT ERRED WHERE IT BASED ITS DECISION ON A STATUTE OF FRAUDS THAT WAS NOT APPLICABLE, WAS NOT RAISED OR SUGGESTED BY EITHER PARTY, AND ERRED WHEN IT FAILED TO CORRECT ITS MISTAKE ON THE MOTION FOR RECONSIDERATION.

    A. Motion for Reconsideration

    B. A Motion for Reconsideration is Particularly Useful Where an Opinion or Order Deals with Unlitigated or Unargued Matters.

13

Plaintiff raises the following additional contentions in his reply-brief:

POINT I

GUARANTEES ARE TO BE STRICTLY CONSTRUED AGAINST THE PARTIES SEEKING ENFORCEMENT AND AGAINST THE PARTY WHO DRAFTED THE GUARANTY AND IN LIGHT OF COMMERCIAL REALITY AND IN ACCORDANCE WITH THE REASONABLE EXPECTATIONS OF THE PARTIES INVOLVED.

POINT II

[DEFENDANTS] DID PERSONALLY GUARANTEE THE OBLIGATIONS OF [FZG] UNDER THE FEBRUARY 2015 LEASE.

POINT III

THE GUARANTEES WERE NOT TERMINATED ON APRIL 11, 2016.

POINT IV

THE GUARANTEE WAS NOT REVOKED BEFORE PLAINTIFF AND FZG ENTERED INTO A CONSENT JUDGMENT FOR PAYMENTS OF AMOUNT DUE.

Defendants raise the following contentions for our consideration:

POINT I

GUARANTIES ARE TO BE STRICTLY CONSTRUED AGAINST THE PARTY SEEKING ENFORCEMENT AND AGAINST THE PARTY WHO DRAFTED THE GUARANTY.

14

POINT II

[DEFENDANTS] DID NOT PERSONALLY GUARANTEE THE OBLIGATIONS OF [FZG] UNDER THE FEBRUARY 20, 2015 LEASE.

POINT III

EVEN IF [DEFENDANTS] DID PERSONALLY GUARANTEE THE OBLIGATIONS OF [FZG] UNDER THE FEBRUARY 20, 2015 LEASE, ANY SUCH GUARANTY TERMINATED ON MAY 11, 2016 THE EFFECTIVE DATE OF THE TERMINATION OF THE FEBRUARY 20, 2015 LEASE.

POINT IV

EVEN IF [DEFENDANTS] DID PERSONALLY GUARANTEE THE OBLIGATIONS OF [FZG] UNDER THE FEBRUARY 20, 2015 LEASE, AND EVEN IF SUCH GUARANTY WAS NOT TERMINATED WITH THE TERMINATION OF THE LEASE IN 2016, SUCH GUARANTY WAS REVOKED BEFORE PLAINTIFF AND [FZG] ENTERED INTO A CONSENT JUDGMENT FOR PAYMENT OF AMOUNTS DUE.

Defendants also make the following arguments in their reply-brief:

POINT I

[Defendants] Did Not Personally Guarantee the Obligations of [FZG] Under the February 20, 2015 Lease.

    A. The Month[-]to[-]Month Lease Drafted by [Plaintiff] is Ambiguous As to Whether It Created a Personal Guaranty by [Defendants]

15

A-2159-22

And, Therefore, the Strict Rules of Construction Against the Finding of A Guaranty Apply.

B. [Plaintiff] Misapplied the Language Included in <u>Ctr. 48 Ltd. P'ship v. May Dept. Stores Co.</u> which states that "the terms of a guaranty agreement must be read in light of commercial reality and in accordance with the reasonable expectations[] of the parties."

C. [Plaintiff] And the Trial Court Have Ignored Important Principles Relied Upon in <u>City of Millville v. Rock</u>.[6]

D. Cases Cited by [Defendants] Fully Support a Finding That There Has Been No Personal Guaranty.

E. Cases Cited by [Plaintiff] Fail to Support a Finding That There Has Been A Personal Guaranty.

<u>POINT II</u>

Even if [Defendants] Did Personally Guarantee the Obligations of [FZG] Under the February 20, 2015 Lease, And Even if Such Guaranty Was Not Terminated With the Termination of the Lease in 2016, Such Guaranty Was Revoked Before Plaintiff And [FZG] Entered into A Consent Judgment For Payment of Amounts Due.

---

[6] <u>City of Millville v. Rock</u>, 683 F. Supp. 2d. 319 (D.N.J. 2010).

16 <span>A-2159-22</span>

II.

We begin by acknowledging the foundational legal principles governing this appeal. Our review of a trial court's summary judgment decision is de novo, applying the same standard used by the trial court. DeSimone v. Springpoint Senior Living, Inc., 256 N.J. 172, 180 (2024). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). We "accord no 'special deference' to the 'trial court's interpretation of the law and the legal consequences that flow from established facts.'" Cherokee LCP Land, LLC v. City of Linden Plan. Bd., 234 N.J. 403, 414-15 (2018) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

A non-moving party "cannot defeat a motion for summary judgment merely by pointing to any fact in dispute." Brill, 142 N.J. at 529. Thus, "once the moving party presents sufficient evidence in support of the motion, the opposing party must 'demonstrate by competent evidential material that a genuine issue of fact exists.'" Globe Motor Co. v. Igdalev, 225 N.J. 469, 479-

80 (2016) (alteration in original) (quoting Robbins v. Jersey City, 23 N.J. 229, 241 (1957)).

Likewise, the interpretation of a contract is generally reviewed de novo. See Serico v. Rothberg, 234 N.J. 168, 178 (2018); Est. of Pickett v. Moore's Lounge, 464 N.J. Super. 549, 554-55 (App. Div. 2020). "An issue regarding interpretation of a contract clause presents a purely legal question that is particularly suitable for decision on a motion for summary judgment," Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 4:46-2 (2025), unless there are material facts in dispute. Driscoll Constr. Co. v. State, Dep't of Transp., 371 N.J. Super. 304, 314 (App. Div. 2004).

### III.

We first address defendants' argument in their cross-appeal because if they are correct, it would be unnecessary to address the arguments raised in plaintiff's appeal. Defendants maintain that no personal guarantee was ever created and ask us to reverse Judge Friedman's denial of their cross-motion for summary judgment.

"Generally, a guarantor is a different person from the maker or, if the same person, signs in different capacities when signing as maker and guarantor (e.g., an individual may sign as an officer of a corporate maker and also sign

18

individually as a guarantor of the corporate obligation)." Ligran, Inc. v. Medlawtel, 86 N.J. 583, 589 (1981). Essentially, "[u]nder a guaranty contract, the guarantor, in a separate contract with the obligee, promises to answer for the primary obligor's debt on the default of the primary obligor." Feigenbaum v. Guaracini, 402 N.J. Super. 7, 18 (App. Div. 2008) (internal quotation marks omitted) (quoting Cruz-Mendez v. ISU/Ins. Servs., 156 N.J. 556, 568 (1999)); see also Great Falls Bank v. Pardo, 263 N.J. Super. 388, 398 n.5 (Ch. Div. 1993), aff'd, 273 N.J. Super. 542 (App. Div. 1994) ("A guaranty is a separate and independent contract. The guarantor is not a party to the contract between the principal obligor and the guarantee, and the principal obligor is not a necessary party to the contract of guaranty."). Further, where a guarantee exists and a demand upon the guaranteed debt covered is not paid, the party that the guaranty was made to may sue to collect on it. U.S. Rubber Co. v. Champs Tires, Inc., 73 N.J. Super. 364, 373 (App. Div. 1962).

We apply three well-established principles of interpretation and construction of guaranty contracts. First, ambiguous language should be construed in the guarantor's favor according to its clear terms so as to affect the parties' objective expectations. Housatonic Bank & Tr. Co. v. Fleming, 234 N.J. Super. 79, 82 (App. Div. 1989); Ctr. 48 Ltd. P'ship, 355 N.J. Super. at 405-06.

Second, a guarantor is not bound beyond the strict terms of its promise. See Ctr. 48 Ltd. P'ship, 355 N.J. Super. at 390 (holding that a guarantor's "obligation cannot be extended by implication") (citing Housatonic Bank, 234 N.J. Super. at 82). And third, "the terms of a guarantee agreement must be read in light of commercial reality and in accordance with the reasonable expectations of persons in the business community involved in transactions of the type involved." Id. at 405-06 (citing Mt. Holly State Bank v. Mt. Holly Washington Hotel, Inc., 220 N.J. Super. 506, 511 (App. Div. 1987)).

Applying these general principles, we turn our attention to defendants' assertion that the Lease's guarantee language, which plaintiff drafted, is ambiguous and that they never intended to become personally liable for FZG's obligations under the Lease. One of their central arguments is that the Lease does not have two sets of signature lines nor indicates that they are signing as individuals distinct from their roles as part owners of FZG.[7]

---

[7] Defendants argue numerous reasons why the Lease language is purportedly ambiguous, including that:

> There is nothing in any of the numbered paragraphs of the [L]ease that states that a signing of the lease by a member of the LLC tenant, creates a personal guaranty of the [L]ease obligations by the signing member. For example, paragraph 9 of the [L]ease which is headed

While we agree with defendants that "ambiguous terms are generally construed against the drafter of the contract," Malick v. Seaview Lincoln Mercury, 398 N.J. Super. 182, 187 (App. Div. 2008), we see nothing ambiguous in the phrase "personally guarantee." Ultimately, an agreement to provide a guarantee is generally governed by the same rules of construction applied to any other contract. Ctr. 48 Ltd. P'ship, 355 N.J. Super. at 405. "[W]here the terms

> "Insurance and Guaranties" includes no language at all as to guaranties.
>
> The single sentence relied upon by [plaintiff] is tucked away in a "IN WITNESS WHEREOF" clause which comes after all of the substantive paragraphs of the [L]ease . . . and which is typically not the place in a document where substantive and important provisions of a lease are placed. Moreover, the single sentence relied upon appears in regular type and is not bolded, underlined, place[d] in all CAPS or otherwise highlighted. A lay reader can easily (and apparently did) skip over such language.
>
> At the place where the [L]ease is signed, the name of each tenant signor is typed directly below the signature line followed by "- FXG Enterprises." Importantly, at the place of each signature the word "guaranty" does [not] appear, the word "individually" does not appear and the word "personally" does not appear. . . .
>
> The [L]ease was the only document signed by [defendants]. There was no separate guaranty document, . . . page or . . . paragraph marked guaranty.

of a contract are clear and unambiguous[,] there is no room for interpretation or construction and the courts must enforce those terms as written." Karl's Sales & Serv., Inc. v. Gimbel Bros., Inc., 249 N.J. Super. 487, 493 (App. Div. 1991).

While it is true that the guarantee language was not bolded or capitalized, and there was only one signature line in the Lease for each defendant, the fact remains that they signed directly below the last sentence in the only paragraph on that page, which read "[a]dditionally, the undersigned jointly and severally each hereby personally guarantee the obligations of the Tenant herein."

Tellingly, moreover, the signature lines for Kromish and Vinson were formatted with their personal addresses, not the company's address. That supports the conclusion they signed as individuals, not just as members of FZG.

Defendants rely on City of Millville, 683 F. Supp. 2d. at 319, for the claim that they signed the Lease with the intent to do so only as members of FZG and are thus protected by its limited liability. Judge Friedman also cited that decision, but found it distinguishable from the current matter. We are unpersuaded City of Millville constitutes binding precedent that would require us to reverse Judge Friedman's ruling. In that case, the federal district court judge relied on an unpublished Appellate Division opinion for the proposition that "the Appellate Division counsels against a finding of personal liability

22

because of the manner in which both notes were signed." Id. at 327. While the Lease's formatting is a relevant consideration, we are unaware of any binding, published precedent that categorically requires there be two separate signature lines to hold a signatory liable as a personal guarantor.

In the final analysis, we conclude the Lease language is explicit and unambiguous in that defendants "personally guarantee[d]" the Lease payments. See Josefowicz v. Porter, 32 N.J. Super. 585, 590 (App. Div. 1954) (stating that "technical terms or words of art will be given their technical meaning, unless the context or local usage shows a contrary intention" in trying to construe the specific language in guaranty for a sale of real property). To hold otherwise would be to reform the express language of the contract for the benefit of a party—something we are not prepared to do. See Schenck v. HJI Assocs., 295 N.J. Super. 445, 450 (App. Div. 1996) (explaining that if the contract terms are clear, the court must enforce the contract as written and not make a better contract for either party). To the extent we have not specifically addressed them, any remaining arguments by defendants that they did not intend to personally guarantee rent payment lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

IV.

We turn next to plaintiff's contention that Judge Friedman erroneously held on summary judgment that defendants' personal guarantor obligations effectively ceased on May 11, 2016 when FZG terminated the Lease. Plaintiff asks us to reverse the judge's finding, arguing the termination letter that FZG sent in 2016 merely constituted a modification, and the Lease—including the personal guarantor language—was in effect from February 2015 to April 2020.

As we have explained, the Lease originally provided for monthly terms. FZG attempted to terminate the Lease on April 11, 2016 in writing with a thirty-day notice. However, on May 6, before that termination date took effect, plaintiff alleges the parties resolved the issue and continued with the Lease at a discounted rate. Plaintiff for the proceeding months accepted rent payments and the tenant, FZG, continued to occupy the premises.

In Judge Friedman's first decision, he held that plaintiff's letter dated May 6, 2016, which stated that defendants rescinded the notice to terminate per oral discussion with Liguori, did not reinstitute the Lease's terms. Consequently, the Judge reasoned, the guarantor obligations also terminated because no one, including defendants, other than plaintiff signed the letter before the termination notice became effective.

Even if we accept the argument that the Lease was not terminated but modified, we are satisfied that defendants' personal guarantor obligations did not extend beyond the initial Lease period. We reiterate that a guarantor is not bound beyond the strict terms of its promise. See Ctr. 48 Ltd. P'ship, 355 N.J. Super. at 390 (citing Housatonic Bank, 234 N.J. Super. at 82). Whether the consent judgment (tenant to stay in premises) that Liguori signed on behalf of FZG is considered a new agreement, an extension, a modification, or the start of a month-to-month tenancy,[8] we hold that because defendants did not sign the consent document in their individual capacity, it did not bind them to continue to serve as guarantors. Nothing in the Lease suggests that defendants intended to personally guarantee FZG's rent payments in perpetuity.

In this instance, our strict construction of the Lease language, which benefited plaintiff in the preceding section of our opinion, also undermines plaintiff's argument with respect to the duration of the personal guarantor

_____

[8] We note that a "holdover tenant" is generally defined as "[s]omeone who remains in possession of real property after a previous tenancy . . . expires." Holdover Tenant, Black's Law Dictionary (10th ed. 2014); see also J.M.J. New Jersey Props., Inc. v. Khuzam, 365 N.J. Super. 325, 333-34 (App. Div. 2004); Newark Park Plaza Assocs., Ltd. v. City of Newark, 227 N.J. Super. 496, 499 (Law Div. 1987) ("It is well-settled law in New Jersey that when a tenant continues to occupy a premises after the termination of a lease, [their] status becomes that of a month-to-month holdover tenant.").

obligations. If plaintiff wanted their personal guarantees to continue beyond the Lease term, he was free to include such language in the contract that he drafted. See Malick, 398 N.J. Super. at 187 ("[A]mbiguous terms are generally construed against the drafter of the contract."). We add that under the statute of frauds, N.J.S.A. 25:1-1 to 16, "a promise to be liable for the obligations of another person in order to be enforceable shall be in writing, signed by the person, assuming the liability, or by that person's agent."

In sum, we conclude that, in these specific circumstances, defendants agreed to personally guarantee rent payments only during the term of the Lease agreement, and not to be personally liable in perpetuity for so long as FZG remained at the premises. Whether the present situation is described as a termination or modification, defendants did not participate in any lease negotiations as individuals beyond the period of rent that they agreed to guarantee in the Lease.

In reaching this conclusion, we acknowledge that in this instance, the negotiation between plaintiff and FZG resulted in a reduction of the monthly rent. In Ctr. 48 Ltd. P'ship, we commented that "the better view is to treat as material only those alterations which actually increase the guarantor's risk or liability." 355 N.J. Super. at 410. Applying that principle, we held "to effect a

discharge of the guarantor, an alteration or modification of the underlying lease must either injure the guarantor or actually increase the guarantor's risk or liability." Id. at 394. We also recognized, however, that "courts from other jurisdictions have supported the proposition that a material change to the underlying contract does not have to increase the guarantor's risk in order to discharge the guarantor." Id. at 410.

We think the critical fact here is that while the Lease provided for personal guarantees, it was silent on whether those obligations should remain beyond the Lease term and continue for as long as FZG remained on the premises regardless of whether the individual guarantors participated in future negotiations or signed any future documents pertaining to the tenancy.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

27